The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAURICIO A. LEON, M.D., <br><br> Plaintiff, <br><br> v. <br><br> IDX SYSTEMS CORPORATION, a Vermont Corporation, <br><br> Defendant. | No. CV03-1158P <br><br> DEFENDANT'S MOTION TO DISMISS AND FOR TERMS RE: SPOLIATION OF EVIDENCE <br><br> **NOTE ON CALENDAR: June 18, 2004** <br><br> **Oral Argument Requested** |

## I. INTRODUCTION

Plaintiff Dr. Mauricio Leon claims he is a whistleblower protected by state and federal law. At his recent deposition, he admitted that he intentionally destroyed electronic data on a laptop computer issued to him by his employer, IDX, at a time when he was well-aware of his obligation to preserve evidence pertinent to his employment with IDX and to his whistleblower allegations. The evidence he destroyed includes data relevant to his claims and to IDX's defenses. Specifically, it includes electronic files related to his work for IDX on the project he claims involved fraud against the government, and evidence of pornographic materials he viewed using his IDX-issued laptop computer in violation of IDX's computer use policy. This motion seeks to have Leon's claims dismissed and to

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 1

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

have terms assessed against him as a sanction for his willful and intentional destruction of evidence.

## II. BACKGROUND

**A.  Leon was aware of the potential for litigation with IDX no later than September 2002.**

Leon first threatened litigation against IDX on September 9, 2002. On that date, Leon, through his lawyer Ricardo Guarnero, offered not to go to federal authorities with his claims of fraud in exchange for a three-year severance package valued at well more than $700,000.[1] After IDX rejected this extortion attempt, Leon reported his allegations to federal authorities in Fall 2002. Based on his report, the government opened an investigation into a federally-funded high technology project known as the "SAGE project" in which IDX participates as a joint venture partner. As of Fall 2002, therefore, Leon was aware that he had potential claims against IDX and that a federal investigation was being conducted.

After Leon's extortion attempt, from October 2002 (after Leon retained Guarnero) to April 2003, Leon claimed he had a disability that prevented him working at IDX's Seattle offices or from working with his IDX supervisors. During this time, Leon failed to perform any meaningful work for IDX. IDX had an independent consultant review Leon's disability claim. This consultant determined that Leon could not perform the essential functions of his position with his claimed disability. Leon's failure and inability to perform his job resulted in IDX's decision to place him on involuntary unpaid leave on April 25, 2003.

---

[1] Contemporaneously with this motion IDX has filed a Motion to Compel based upon the crime/fraud exception to the attorney-client privilege. In the background section to that motion, IDX sets forth in detail the background of this suit, including Leon's wrongful conduct in seeking to extort money from IDX and in making false statements to IDX in order to obtain continued employment benefits. Rather than repeat those facts here, IDX refers the Court to that motion, and incorporates the factual background section of that motion and the declarations and exhibits cited therein into this motion by reference.

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 2

**YARMUTH WILSDON CALFO PLLC**
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

In his communications with IDX in this period, Leon and his lawyer repeatedly threatened IDX with litigation for allegedly retaliating against him for his purported whisteblowing activities. On April 25, 2003, in light of Leon's repeated threats of litigation, IDX filed a Declaratory Judgment action in this Court seeking a ruling that IDX could terminate Leon without violating federal or state legal protections for whistleblowers or disability discrimination laws. Declaration of M. Edward Taylor, ¶ 2. In response, on May 5, 2003, Leon filed a whistleblower complaint with the United States Department of Labor (Taylor Decl., ¶ 3); and, on May 20, 2003, he filed an employment discrimination lawsuit in this Court. Taylor Decl., ¶ 2. IDX's Declaratory Judgment Action and Leon's Complaint were eventually consolidated into the instant action. *Id.*

**B.  IDX authorized Leon to retain possession of an IDX-issued laptop after he was placed on leave for the sole purpose of participating in an IDX audit and clearly reminded him of his continuing obligation to preserve electronic data.**

Shortly after Leon started working for IDX in the Spring of 2001, IDX issued him a laptop computer for work-related use. Declation of Howard Bunzey, ¶ 4; Ex. A (relevant excerpts of IDX's computer use policy). The laptop computer remained in Leon's possession until he delivered it to his attorney in approximately October 2003. Leon Dep. at 40[2]; (*see* Declaration of Jordan Gross, Ex. A, filed under seal, which contains all excerpts of Leon's deposition testimony cited in this Motion). On April 30, 2003, two days after filing its Declaratory Judgment action, counsel for IDX faxed and mailed a letter to Leon's then-attorney, Guarnero, enclosing a courtesy copy of IDX's Complaint and reminding Mr. Guarnero of Leon's obligation to preserve all evidence in his possession pertinent to his employment and to issues raised in the Complaint:

---

[2] At his deposition, Leon testified that he returned the laptop to his attorney "several months" before his May 2004 deposition. IDX's computer forensic expert received the laptop in January 2004. Leon's counsel has committed to provide information to IDX as to the exact date the received the laptop from their client. *See* Leon Dep. at 39-40. It is undisputed, however, that Leon had possession of the laptop as late as October 2003. *See* Taylor Decl., Ex.E (Kieffer e-mail of October 24, 2003).

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 3

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

> Given that this action is now pending, I trust you will inform your client that he should retain all documentary and electronic information in his possession or control that concerns IDX, his employment with IDX, and/or the issues raised in the Complaint.

Taylor Decl., Ex. A (April 30, 2003 Letter from E. Taylor to R. Guarnero). The April 30, 2003 letter also demanded the return of the IDX laptop, which was in Leon's possession. *Id.* Having not received a response about the laptop, on May 7, 2003, counsel for IDX again requested the return of the laptop, and requested that Leon's counsel inform IDX by May 12, 2003, as to how Leon wanted to arrange to have the laptop returned to IDX. Taylor Decl., Ex. B (May 7, 2003 Letter from E. Taylor to R. Guarnero).

Guarnero responded on May 8, 2003, acknowledging that IDX had asked Leon to return the laptop and inquiring whether Leon could use it if he needed it to participate in an upcoming audit at IDX. Taylor Decl., Ex. C (May 8, 2003 letter from R. Guarnero to R. Bednar). In response, counsel for IDX agreed that Leon could retain the laptop "for [the] specific purpose [of responding to the auditors] until after the auditors [had] completed their interview of him." Taylor Decl., Ex. D (May 9, 2003 Letter from E. Taylor to R. Guarnero). Counsel for IDX demanded the return of the laptop as soon as the auditors had obtained whatever information they needed from Leon and reiterated Leon's obligation to preserve data on the laptop:

> As soon as the auditors indicate they have obtained from Dr. Leon all information they desire, IDX will expect the return of its laptop. In the meanwhile, I trust you will reinforce to Dr. Leon the need for him to ensure no data on the laptop is lost or corrupted so as to avoid any possible despoliation of evidence.

*Id.* The audit referenced by counsel for IDX was ultimately concluded by July 11, 2003.[3] During the same period, Guarnero was required to withdraw from the case and Leon maintained possession of the laptop. Taylor Decl., ¶ 9.

---

[3] IDX initially intended to use a firm named Sullivan & Powers (which is the firm referenced in Guarnero's letter) to conduct the audit. Taylor Decl., ¶ 8. IDX ultimately used a firm called Rubino & McGeehin to conduct the audit. *Id.*

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 4

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

By email dated October 24, 2003, Leon's new counsel, Ken Kieffer, responded to a renewed inquiry regarding the return of the laptop. Taylor Decl., Ex. E (October 24, 2003 email from K. Kieffer to E. Taylor). In that email, counsel for Leon acknowledges the evidentiary value of the laptop and the data on it, and agrees to return the laptop "promptly" once the parties agreed on a protocol for electronically copying (or "imaging") the contents of the laptop:

> We all recognize that the computer and the files on it are relevant evidence on a variety of legal fronts. In fact, in many instances the files are the original form of potentially relevant evidence[.] . . . We propose that Dr. Leon promptly and securely package up the computer and ship it at IDX's expense to our office here in Tacoma. As that process is taking place, I suggest that IDX and Dr. Leon agree upon a third party service to make a complete and accurate copy of all computer files[.]

*Id.*

On January 21, 2004, Leon's counsel finally agreed to a protocol for the return of the laptop. Declaration of Angelo Calfo, Ex. A. The protocol included provisions for the review and protection of potentially confidential and privileged IDX material to ensure that any such material on the laptop would not be disclosed to third parties, including Leon's personal counsel. *Id.* Under the protocol, the contents of the laptop would be imaged by a third party, without prior review by Leon's counsel. *Id.* IDX was then obligated to provide Leon with a privilege log. *Id.* In agreeing to the protocol, Leon's current counsel stated:

> We have reluctantly decided to produce the laptop computer. . . . We must stress that we and Dr. Leon remain very concerned about possible interference with the integ[ri]ty of the hard drive and the evidence it contains. . . . We reiterate that the complete, pristine original hard drive must be delivered to a [third party for escrow] as soon as possible.

Calfo Decl., Ex. B (January 21, 2004 email from Ken Kieffer to Angelo Calfo and Albert Malanca).[4] It would be an understatement to say that Leon's purported concerns for the

---

[4] IDX makes no claim that Leon's current counsel participated in or had knowledge of Leon's destruction of evidence. IDX believes that Leon's current lawyers were as deceived as was IDX about whether Leon had properly handled the laptop or whether he had tampered with evidence.

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 5

integrity of this evidence are deceptive. As shown below, when Leon delivered the laptop to IDX pursuant to the protocol the hard drive was anything but "pristine."

C. **Forensic analysis reveals that data was intentionally deleted from the laptop well after Leon was obligated to preserve evidence.**

The laptop was eventually delivered to IDX's computer forensics expert, Reginald Norberg, on February 5, 2004. Declaration of Reginald H. Norberg, ¶ 2. Pursuant to the parties' agreement, Norberg imaged the contents of the laptop and provided copies of the images to each party. *Id.*, ¶ 2. Exclusively for IDX, Norberg also analyzed the contents of the laptop forensically to assess computer user activity, to determine whether any data had been deleted and, if so to determine whether any such data was retrievable. *Id.*, ¶¶ 3-10.

Based on his forensic analysis of the contents of the laptop computer, Norberg reached the following conclusions:

- All data in the hard drive's unallocated space (*i.e.* the space where data that has purportedly been deleted by the user is housed) had been intentionally "wiped" (or erased) sometime near the last time the computer was used, which appears to have been after August 18, 2003;

- The data erased includes deleted files that appear to have contained IDX-related materials;

- The computer's system clock was disabled on or after August 18, 2003. As a result, the ability to determine with certainty the dates files were created, modified, accessed, and the ability to determine when and to what extent the computer was used after August 18, 2003, has been substantially reduced;

- The computer was used to view and download files of a pornographic nature through newsreader programs that were installed and subsequently deleted. The wiping of the unallocated drive space has reduced the ability to determine the full extent of the newsgroup activity, the time period involved, and the total volume of the downloaded material;

- Substantially all of the files contained on the drive have been copied to another computer and a complete backup of the drive was made during the last week of October 2003. The files copied and the backup file include files that contained material identified as privileged by counsel.

- The computer was in operation (at a minimum) on the following dates: May 7, 13 – June 9, 2003; June 14 – 28, 2003; July 17-20, 2003, August 1-18, 2003. In addition, the computer was used subsequent to August 18, 2003, but the disabling of the system clock has reduced the ability to determine with reasonable certainty the exact dates it was used.

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 6

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

Norberg Decl., ¶¶ 5-10.

**D.    Leon admits in his deposition that he intentionally destroyed data on the laptop.**

Leon was deposed in this matter on May 13 and 14, 2004. *See* Gross Decl., Ex. A (filed under seal). In his deposition he admitted the following:

- He began deleting files he deemed personal from his IDX-issued laptop when he was first placed on leave in September 2002, and continued to delete files on the computer up to the day he gave the laptop to his attorney in late October 2003. Leon Dep. at 40-44, 50, 54, 297.

- He created a "wiping" program to overwrite the unallocated space on the laptop's hard drive to ensure that no one would be able to view the files that he deleted, and he did this shortly before he shipped the computer to his attorney in October 2003. *Id.* at 49-50, 54, 111-12, 294-98.

- He created a backup of the laptop's hard drive before he ran the wiping program and before giving IDX an opportunity to review the contents of the laptop for privileged or protected material. *Id.* at 40, 295-300.[5]

- When he created the backup, he was aware that IDX had asked to review the contents of the laptop for privileged material and had agreed to provide him with an imaged copy of the laptop's hard drive once it had redacted any privileged material. *Id.* at 299.

**REDACTED — This Page Filed Under Seal Pursuant to the Parties' Protective Order**

- He was aware that IDX had requested the return of the laptop in April 2003, that he was permitted to retain the laptop for the sole purpose of participating in an upcoming audit, and that he had been directed to ensure that no data on the laptop was lost. *Id.* at 73-76.

- He was aware that IDX had requested that he preserve all electronic evidence. *Id.* at 294.

Leon denied ever deleting any files or data related to IDX's federal grant project (the "SAGE project"). Leon Dep. at 82. His testimony, however, is flatly contradicted by the results of the forensic analysis. *See* Norberg Decl., Ex. B. He further denied altering

---

[5] As noted, Leon and his current counsel had specifically agreed to permit IDX to obtain the computer and delete all privileged information prior to returning a mirror-image of the computer's hard drive to Leon and his counsel for use in this litigation. Calfo Decl., Ex. A.

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 7

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

the laptop's system clock, *Id.* at 46-47, and later denied any "recollection of every doing anything like that," even though this occurred while the laptop was in his exclusive possession *Id.* at 300-01. Although Leon made several clear admissions relating to his evidence tampering, he also waffled in response to questions about whether he tampered with the system clock, and other issues. To further clarify these issues, IDX has issued requests for admission on these subjects which should be available to the Court before ti resolves this Motion.

### III. DISCUSSION

**A.  The Court has broad authority to penalize the destruction of evidence, which includes the discretion to dismiss a party's claims and to impose terms.**

All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and "to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (quotation omitted); *see also Unigard Sec. Ins. Co. v. Lakewood Eng. & Manuf. Corp*, 982 F.2d 363, 368 (9th Cir. 1992). Through this power, courts have the ability to punish conduct both within their confines and beyond, regardless of whether that conduct interfered with trial. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987). A federal court's power to sanction spoliation is "broader and more flexible" than that conferred by Federal Rule of Civil Procedure 37 (covering sanctions for discovery violations). C. Sasso, M. Birk, *Discovery and Spoliation Issues in the High-Tech Age*, 32 Colorado Lawyer 81, 83 (Sept. 2003) (citing cases). A district court's exercise of its authority to punish spoliation will be reviewed for abuse of discretion on appeal. *Unigard*, 982 F.2d at 367.

Under Ninth Circuit law, there is no requirement that the party seeking a remedy for spoliation prove that evidence was destroyed in bad faith. *Unigard*, 982 F.2d at 368, n. 2 (district court has power "to sanction under its inherent powers not only for bad faith, but also for willfulness or fault by the offending party.") (citation omitted); *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1330 (9th Cir. 1993) (directing the trial court on remand to give an

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 8

**YARMUTH WILSDON CALFO PLLC**
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1  instruction that did not require the jury to find bad faith before it could apply a presumption
2  that the condition of destroyed physical evidence was unfavorable to the party responsible
3  for the spoliation). District courts, therefore, "may impose sanctions against a party that
4  merely had notice that the destroyed evidence was potentially relevant to litigation." *Toste*
5  *v. Lewis Controls*, 1996 WL 101189, *2 (N.D. Cal. 1996) (citing *Glover*, 6 F.3d at 1329;
6  *Akiona v. United States*, 938 F.2d 150, 161 (9th Cir. 1991)).[6]

"The purpose of spoliation sanctions is to compensate the party that has been prejudiced by the destruction, to punish the wrongdoer, and to prevent future problems." *Discovery and Spoliation Issues in the High-Tech Age*, 32 Colorado Lawyer at 83. The sanctions can include dismissal of the party's claims; entry of a default judgment against the party; exclusion of expert testimony; application of the "adverse inference rule;" application of a rebuttable presumption against the despoiler, or monetary sanctions. *Id. See also Federal Courts' Authority to Impose Sanctions for Prelitigation or Pre-Order Spoliation of Evidence*, 156 F.R.D. 313 (1994); *Unigard, supra.* (upholding the trial court's exclusion of expert testimony regarding the cause of an accident and rejecting the argument that a court's only recourse in addressing spoliation to is apply a rebuttable presumption); *Wong v. Swier*, 267 F.2d 749, 759-60 (9th Cir. 1959) (applying a rebuttable presumption against despoiler); *Glover*, 6 F.3d at 1329 (court has the discretion "to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence" including the discretion to give the jury an "adverse inference" instruction); *Chambers*, 501 U.S. at 44-45 (as a function of its inherent authority, a court can dismiss a case in its

---

[6] Washington law on spoliation, which is not extensive, appears to require a showing of bad faith to establish spoliation. Normally, where a case involves both federal and state claims, any differences between state and federal law need to be analyzed under the *Erie* doctrine to determine whether the result will differ. *See Toste*, 1996 WL 101189, *2, n. 2 (N.D. Cal. 1996). However, in light of Leon's admissions at his deposition, there can be no dispute that Leon destroyed evidence in bad faith (as opposed to inadvertently) knowing that he had an obligation to preserve all electronic data on the laptop. *See* 5 Wash. Prac. § 402.6 (updated 2003) ("The term *spoliation* is usually intended as a term of art, referring to the legal conclusion that a party's destruction of evidence was both willful *and* improper.") (italics in original).

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 9

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

entirety, bar witnesses, award attorney's fees and assess fines); *Toste*, 1996 WL 101189, *2 ("a court may dismiss the claim of the party responsible for destroying the evidence") (citing cases); *Turner v. Hudson Transit Lines*, 142 F.R.D. 68 (S.D.N.Y. 1991) (imposing costs and fees); *In re Prudential Ins. Co. Sales Practices Litig.*, 169 F.R.D. 598 (D.N.J. 1997) (imposing a court fine and awarding costs and fees for violation of court's nondestruction order).

**B. IDX is entitled to an evidentiary presumption that Leon destroyed data unfavorable to him.**

In resolving this motion, the Court should apply an evidentiary presumption in IDX's favor that the data Leon admits he destroyed included evidence unfavorable to his claim, either because it undermined his allegations or because it helped IDX's defense. Under both Washington and Ninth Circuit law, "where relevant evidence which would properly be part of a case is within the control of a party whose interests it would naturally be to produce it and he fails to do so, without satisfactory explanation, the *only* inference which the finder of fact may draw is that such evidence would be unfavorable to him." *Henderson v. Tyrrell*, 80 Wn. App. 592, 606, 910 P.2d 522 (1996) (emphasis added); *see also Unigard*, 982 F.2d at 369 (Where a party destroys or tampers with evidence, a court can apply "rebuttable presumption against the responsible party that the evidence, if it had not been despoiled, would have been detrimental to the despoiler") (citing *Wong*, 267 F.2d 749). The rebuttable presumption, as its name suggests, "shifts the burden of proof to a party who destroys or alters important evidence." *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 480, 972 P.2d 475 (1999). The rebuttable presumption, which is similar and closely related to an adverse inference instruction to a jury, can be invoked not just in argument to the jury, but can also be argued to the court in motions practice. *See Marshall*, 94 Wn. App. 372, *generally* (discussing the concept in the context of a trial court's rejection of a spoliation claim in granting summary judgment to the alleged despoiler).

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 10

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

C. **Leon's intentional destruction of evidence warrants dismissing his Complaint in its entirety.**

1. **It is undisputed that Leon intentionally destroyed data in violation of his obligation to preserve evidence.**

A party is under a duty to preserve evidence he knows or reasonably should know is relevant to his action as soon as a potential claim is identified. *Toste*, 1996 WL 101189, *3 (citing *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556-57 (N.D. Cal. 1987), *Unigard*, 982 F.2d at 365, 369). The evidentiary inferences and presumptions described above come into play once a party has notice that the evidence destroyed was relevant. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991); *see also Nation-Wide Check Corp. v. Forest Hills Distrib.*, 692 F.2d 214, 219 (1st Cir. 1982).

Leon was on notice as soon as he contemplated litigation against IDX that he had a duty to preserve evidence. It is undisputed that Leon contacted an attorney with respect to his employment claims against IDX in September 2002. Thus, this is the latest date possible on which he became obligated to preserve evidence, and any willful or reckless destruction or alteration of potentially relevant evidence after that date is spoliation. *See Henderson*, 80 Wn. App. at 611, n.7 (citing *Fire Ins. Exch. v. Zenith Radio Corp.*, 103 Nev. 648, 747 P.2d 911, 913-14 (1987) ("[E]ven where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.")).

Furthermore, counsel for IDX clearly reminded Guarnero of his client's obligation to preserve evidence on April 30, 2003, and specifically of his obligation to retain electronic information in his possession "that concerns IDX, his employment with IDX, and/or the issues raised in the Complaint." Thus, there can be no argument that Leon was unaware of his obligation to preserve evidence in general, and electronic data in particular, from April 2003 on. *See Henderson*, 80 Wn. App. at 611 ("even though [the party who

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 11

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

destroyed evidence] testified he was unaware of defense counsel's request that the [evidence] be preserved, he can be charged with knowledge through his attorney.").

In his deposition, Leon admitted that he not only deleted files from the laptop, but also took the extra (and extraordinary) step of personally creating a program that permanently erased all data from the unallocated space on the hard drive. Leon attempted, in his deposition, to justify his destruction of evidence on the ground that it was "personal data" he did not want to reveal. Aside from the fact that IDX is entitled to an evidentiary presumption that the data destroyed was unfavorable to Leon, his characterization of the contents of the deleted and wiped data is irrelevant to his duty to preserve that data because it begs the question of whether it was relevant to the litigation in the first place. His attorney, furthermore, acknowledged in his October 24, 2003 email to counsel for IDX that the parties "all recognize[d] that the computer and the files on it are relevant evidence on a variety of legal fronts. In fact, in many instances the files are the original form of potentially relevant evidence[.]" Taylor Decl., Ex. E. Finally, what little information that was retrieved shows that Leon destroyed files undoubtedly pertaining to IDX, not just purportedly "personal information." *See* Norberg Decl., Ex. B, showing deleted and wiped files with titles such as:

IDX\PROJECTS\NIST\AMIA meeting\AGENDA-PLAN;

IDX\Informatics Meetting[sic]\Meeting08;

IDX\PROJECTS\NIST\REPORTS\SAGE_assessment-Key strategic issues;

IDX\PROJECTS\NIST\project planning\task_CIS_oa_requirements;

IDX\PROJECTS\NIST\correspodence\_WRD0002.[7]

In addition to actively deleting files and creating a program to erase data from the unallocated space on the hard drive, the mere fact of using a computer to create or overwrite existing files amounts to altering data because "deleted" data is constantly being

---

[7] A listing of files Leon "wiped" is attached to the Declaration of Reginald Norberg as Exhibit A.

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 12

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

overwritten to make space for new files and data. Thus, Leon's mere act of using the laptop after he was on notice to preserve evidence is spoliation. Although IDX permitted Leon to retain possession of the laptop after his attorney so requested in his May 8, 2003 letter, it made it clear that the only authorized use from that point forward was to participate an upcoming IDX audit. It is undisputed that Leon did not ultimately participate in that audit. *See* Taylor Decl., ¶ 8. Therefore, he had no authority to even turn on the computer for any reason as of April 2003.

The evidence shows that Leon actively used the computer to create, delete and modify files after April 2003, and that he continued to use the laptop to conduct personal business. Furthermore, once the IDX audit referenced in counsel's correspondence was completed on July 11, 2003, Leon had no legitimate reason to retain possession of the laptop or conduct any business on it, personal or professional. Yet, it was not until the fall of 2003, after Leon retained new counsel, that he turned the laptop over to his attorney. In the meantime, Leon:

- Created and ran a program to wipe the unallocated space on the hard drive which made it impossible to retrieve any data that may have been stored there;

- Actively deleted files and data, including IDX-related materials, in violation of his legal obligation to preserve evidence and in contravention of the parties' agreement that he could only use the computer for the discrete purpose of participating in the IDX audit, if necessary;

- Used the computer for personal business, including viewing pornography, in violation of IDX's computer use policies and in violation of his obligation to preserve evidence, given that his mere use of the computer constantly altered data on the hard drive; and

- In the last week of October 2003, without authorization, copied all of the files contained on the drive to another computer and ran a backup of the hard drive, which included files containing privileged material.

In addition, on or after August 18, 2003, the laptop's system clock was disabled. This action reduced, if not eliminated, the ability to determine with certainty the dates files were accessed and the extent to which the computer was used after that date. Although Leon would not admit to doing this in his deposition, *see* Leon Dep. at 46-47, access to the

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 13

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

laptop was restricted by a password that only Leon had, *see* Leon Dep. at 36, 39, and it occurred during the time the laptop was in his exclusive possession. The only reasonable inference that can be drawn from this set of facts is that, in addition to "wiping" the hard drive, creating an unauthorized backup, and continuing to use the laptop when he was no longer permitted to do so, Leon also disabled the laptop's system clock to obscure the extent of his activity on the computer when it was abundantly clear he should not have been using it at all.

There can be little argument that IDX was not prejudiced by these actions. Both the deletion of files and the system clock issue are prejudicial to IDX and particularly relevant to the employment law claims, since IDX could have used a complete record of Leon's computer use to prove that he did no work between October 2002 and April 2003, while he remained on IDX's payroll. This type of evidence is relevant to IDX's defenses to the extent Leon claims he was constructively discharged and wrongfully placed on unpaid leave of absence because it would justify IDX's employment actions. This type of evidence, furthermore, is relevant to the amount of Leon's purported damages to the extent it confirms Leon was not performing any meaningful work for IDX during between the time he sought to extract money from IDX in exchange for his silence in the Fall of 2002 and April 2003, when he was placed on leave status.

2.  **Dismissal of Leon's claims is the appropriate remedy in this case.**

"[O]omnia praesumuntur contra spoliatorem," or "all things are presumed against the destroyer," is a maxim that has traditionally "been used to instruct juries that lost or destroyed evidence may have been harmful to the party that lost or destroyed it." 20 The National Law Journal 2 (1997). Lately, however "[i]n an unmistakable national trend, federal and state courts are responding to spoliation with more than adverse jury instructions. Increasingly, they are summarily dismissing claims brought by spoliators." *Id.* Dismissal of a party's claim is a "particularly severe sanction, yet is within the court's

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 14

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

discretion." *Chambers,* 501 U.S. at 45. And it is a sanction that should be applied where, as here, there is a flagrant and intentional destruction of evidence in the face of a known duty to preserve evidence. *See Alexander v. National Farmers Org.,* 687 F.2d 1173, 1205 (8th Cir. 1982) (dictum) (dismissal of claims is a severe sanction and may be warranted for "outrageous" destruction of evidence).

Dismissal of Leon's entire complaint is warranted in this case in light of Leon's admittedly intentional destruction of evidence during a time when there can be no dispute that he was obligated to preserve *all* data on the laptop (regardless of his subjective belief that it was "personal" information he was entitled to delete). Any lesser sanction would undermine the seriousness of Leon's conduct, fail to adequately punish his blatant destruction of evidence, and would do nothing to dissuade other parties from engaging in the same type of conduct in the future.

**D.   In the alternative, the Court should enter findings terminating Leon's right to damages as of the date of his destruction of evidence.**

As noted, this Court's discretion to fashion an appropriate response to the destruction or alteration of evidence is broad. If the Court chooses not to dismiss Leon's claims in their entirety, IDX requests, in the alternative, that the Court sanction Leon by limiting his damages to alleged harm that occurred before he destroyed and corrupted evidence and manipulated the computer's internal clock. Otherwise, Leon will be able to argue for and collect damages for harm he allegedly suffered after he intentionally and willfully destroyed evidence relevant to this litigation. Such a result would be manifestly unfair to IDX and would do nothing to discourage similar conduct by other litigants.

Leon admitted that he intentionally destroyed evidence beginning in September 2002 when IDX first placed him on leave in response to his request for money in exchange for his promise not to go to authorities with his allegations. And he admitted that he continued to delete files on his computer from that time until he and his attorneys recognized in the Fall of 2003 that they were going to finally return the computer to IDX.

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 15

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

At this point, Leon created a program and erased all data on the unallocated space on the laptop for the specific purpose of ensuring that no one could view the files he had deleted in anticipation of returning the laptop to IDX. In other words, Leon first knowingly deleted files from the laptop, and then covered up his deletion by creating a program to forever prevent IDX from learning what was contained in the files he deleted.

IDX believes that dismissal of Leon's claims is the appropriate and proportionate sanction in this case because Leon's conduct was intentional and admittedly undertaken for the sole purpose of destroying evidence in violation of a known duty to preserve evidence. In the alternative, however, IDX submits that, at a minimum, Leon should be barred from asking for and being awarded damages he claims to have suffered after September 2002, when he began his process of intentional destruction of evidence and obstruction of justice.

Should the Court proceed in the alternative, in addition to entering a conclusive finding limiting Leon's damages to the time period prior to September 2002, IDX submits that the Court should also enter findings of fact relating to Leon's conduct that will be read to the jury at trial as follows:

- On or about September 11, 2002, Leon was aware that he intended to assert claims against IDX relating to his employment;

- Shortly after this date, Leon began to delete files from his IDX-issued laptop computer, and continued to delete files from his computer until approximately October 2003;

- On May 9, 2003, after Leon was aware of his intention to assert claims, Leon was notified by IDX that he was only authorized to use the IDX-issued laptop to communicate with outside auditors relating to his claims regarding IDX's handling of the SAGE project, and that it thereafter must be returned to IDX;

- On May 9, 2003, IDX further reminded Leon that he was "to ensure no data on the laptop is lost or corrupted so as to avoid the possible despoliation of evidence;"

- In approximately October 2003, Leon created and ran a program that erased data from the laptop with the specific intention to prevent anyone from knowing what was contained in files that he had previously deleted;

- The data erased from the laptop was potential evidence in this matter that Leon destroyed intentionally and in bad faith;

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 16

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

- The jury is to presume that the evidence on the computer deleted by plaintiff Leon was unfavorable to Leon on each of his claims for relief; and

- The jury may not award damages to plaintiff Leon for harm he claims to have suffered after September 2002, when he intentionally began destroying evidence.

Without at least this minimum sanction, Leon will benefit from his manipulation and destruction of evidence.

E.   **IDX is also entitled to terms to reimburse it for the costs and fees it incurred in addressing Leon's spoliation.**

This Court's discretionary power to make appropriate rulings in response to the destruction or spoliation of relevant evidence includes the power to impose monetary sanctions. *Chambers*, left no doubt that a court may levy fee-based sanctions when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," "delay[ed] or disrupt[ed] litigation," or has otherwise taken actions in the litigation for an improper purpose. 501 U.S. at 45-46 (quotations omitted); *see also Turner*, 142 F.R.D. 68; *In re Prudential Ins. Co*, 169 F.R.D. 598 (awarding costs and fees associated with motions and discovery surrounding the spoliation); *Capellupo v. FMC Corp.*, 126 F.R.D. 545 (D. Minn. 1989) (awarding double costs and attorney fees). "[A]n award of costs serves both punitive and remedial purposes: it deters spoliation and compensates the opposing party for the additional costs incurred." *Turner*, 142 F.R.D. at 78. "Such compensable costs may arise either from the discovery necessary to identify alternative sources of information[8] . . . or from the investigation and litigation of the . . . destruction itself.[9]" *Id.*

In addition to dismissal of Leon's complaint or entry of conclusive findings regarding Leon's spoliation, IDX should be entitled to recover the amounts it has expended

---

[8] Citing *Allen Pen Co. v. Springfield Photo Mount Co.*, 653 F.2d 17, 23-24 (1st Cir. 1981); *Capellupo*, 126 F.R.D. at 552; *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 90 F.R.D. 613 (ND. Ill.1981).

[9] Citing *Capellupo*, 126 F.R.D. at 552; *National Ass'n of Radiation Survivors*, 115 F.R.D. at 558.

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 17

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

in uncovering and responding to his bad faith destruction of evidence. Leon's destruction of evidence has resulted in substantial additional costs to IDX, including:

- Expert fees paid by IDX to its computer forensic expert for his investigation and analysis of the contents of the laptop hard drive, consultation with counsel and IDX, and preparation of an expert report on this matter;

- Attorney fees incurred by IDX to work with IDX's computer expert to identify and understand Leon's erasure of data;

- Attorney fees incurred by IDX to prepare for Leon's deposition on spoliation-related issues; and

- Attorney and expert fees in connection with the preparation of this motion to dismiss and for terms.

All of these expenses were occasioned by Leon's willful destruction of evidence, and they are expenses for which he, not IDX, should bear the responsibility.

In addition, addressing this issue consumed substantial internal resources at IDX, in the form of time and energy devoted by personnel in its information systems departments and General Counsel's office in consulting with outside counsel and IDX's expert, in providing information pertinent to the laptop, its use, IDX system files, and in interpreting the information retrieved from the laptop. Although IDX is not claiming these internal expenses as part of its request for sanctions, they should be factored into the Court's consideration of the propriety of the requested relief.

Finally, IDX requests that the Court impose a fine against Leon in an amount it deems appropriate that will adequately punish his intentional and knowing destruction of evidence. The imposition of a fine, again, lies squarely within this Court's discretion to manage its affairs and punish bad faith conduct. *See Chambers,* 501 U.S. at 44-46; *In re Prudential Ins. Co.,* 169 F.R.D. 598 (imposing a $1 million court fine for violation of the court's non-destruction order). And it is a sanction that has been used recently in this

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 18

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

District to address discovery abuses. *See Heath v. F/V Zolotol*, No. C01-1988Z (imposing a $25,000 fine against defendants' counsel for failure to disclose witness statements).[10]

## IV. CONCLUSION

Based on the foregoing, IDX requests an order dismissing Leon's claim in its entirety, or, alternatively, entering conclusive findings limiting his damages; awarding IDX its cost and fees surrounding its investigation and litigation of Leon's spoliation; and imposing a fine against Leon in an amount determined by the Court.

DATED this 27th day of May, 2004

> s/Angelo J. Calfo
> Angelo J. Calfo, WSBA No. 27079
> Jordan Gross, WSBA No. 23398
> YARMUTH WILSDON CALFO PLLC
> 2500 IDX Tower
> 925 Fourth Avenue
> Seattle, WA 98104
> Telephone: (206) 516-3800
> Fax: (206) 516-3888
> Email: acalfo@yarmuth.com
>
> SEBRIS BUSTO JAMES
> M. Edward Taylor, WSBA # 16864
> 14205 Se 36th St. #325
> Bellevue, WA 98006
> Telephone: 425-460-8232
>
> Attorneys for Defendant IDX Systems

---

[10] A copy of Judge Zilly's Order is attached to the Declaration of Angelo J. Calfo as Exhibit C.

DEFENDANT'S MOTION TO DISMISS AND
FOR TERMS RE: SPOLIATION OF EVIDENCE
NO. CV03-1158P – Page 19

304.01 ee183201 5/27/04

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888