The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MAURICIO A. LEON, M.D.,

        Plaintiff,

    v.

IDX SYSTEMS CORPORATION, a
Vermont Corporation,

        Defendant.

No. CV03-1158P

DECLARATION OF ANGELO J.
CALFO IN SUPPORT OF
DEFENDANT'S MOTION RE:
SPOLIATION

I, Angelo J. Calfo, declare and say:

    1.    I am member of the law firm of Yarmuth Wilsdon Calfo PLLC. We represent IDX in this matter. I have personal knowledge of the matters stated herein.

    2.    On January 7, 2004, I caused a letter memorializing IDX's agreement with Leon regarding the return and handling of the IDX laptop in Dr. Leon's possession to be faxed and mailed to Dr. Leon's counsel, Kenneth Kieffer. The protocol included provisions for allowing IDX to first review the contents of the laptop to determine whether it contained any privileged material. Under the protocol, IDX was obligated to provide a privilege log to Leon if it intended to redact and claim privilege to any materials on the laptop. A true and correct copy of my January 7, 2004 letter to Mr. Kieffer is attached to this Declaration as Exhibit A.

DECLARATION OF ANGELO J. CALFO IN
SUPPORT OF DEFENDANT'S MOTION RE:
SPOLIATION
NO. CV03-1158P – Page 1

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1      3.      On January 21, 2004, Mr. Kieffer responded by email, agreeing to the

2    protocol.  A true and correct copy of Mr. Kieffer's January 21, 2004 email is attached to

3    this Declaration as Exhibit B.

4      4.      On May 12, 2004, Judge Zilly entered an Order in the matter of *Heath v. F/V*

5    *Zolotol*, No. C01-1988Z, on the plaintiff's motion for sanctions, which is in the public

6    record.  A true and correct copy of the Order is attached to this Declaration as Exhibit C for

7    the Court's reference.

8      I certify under penalty of perjury under the laws of the State of Washington that the

9    foregoing is true and correct.

10    DATED this the 26<sup>th</sup> of May, 2004, at Seattle, Washington

11

12

13    _____
     Angelo J. Calfo

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF ANGELO J. CALFO IN
SUPPORT OF DEFENDANT'S MOTION RE:
SPOLIATION
NO. CV03-1158P – Page 2

304.01 ee263204 5/26/04

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

# Exhibit A

# YARMUTH WILSDON CALFO PLLC
ATTORNEYS AT LAW

ANGELO J. CALFO
DIRECT (206) 516-3872
acalfo@yarmuth.com

3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000

T (206) 516-3800
F (206) 516-3888
www.yarmuth.com

January 7, 2004

**VIA FACSIMILE and U.S. MAIL**

Kenneth Kieffer
Gordon, Thomas, Honeywell, Malanca
  Peterson & Daheim LLP
1201 Pacific Ave. Suite 2100
Post Office Box 1157
Tacoma, Washington 98401

      Re:    IDX Systems Corporation (IDX)

Dear Ken:

      This letter will memorialize the agreement between IDX and Dr. Leon for the return of Dr. Leon's laptop computer to IDX so that both parties may have access to the material for purposes of the pending employment litigation and the federal government's related, ongoing investigation. The parties have agreed as follows:

- The parties agree to the use of Reg Norberg, Computer Investigative Services, a consultant retained by IDX, to handle the computer hard drive to make mirror images of it to be distributed to both parties;

- IDX will pay for Reg Norberg's services in this regard;

- After its hard drive has been imaged, the laptop computer (and the original hard drive) will be escrowed with a Seattle lawyer acceptable to both parties – we agreed that Rob Stewart at McNaul Ebel would be an acceptable escrow agent; and

- Reg Norberg will observe the protocol set forth in the attachment to this letter in creating the mirror images of the hard drive and in delivering them to counsel for IDX and Dr. Leon.

The one sticking point appears to be the handling of any material on Dr. Leon's computer that is subject to a claim of privilege by IDX. Given the circumstances of this case, it is certainly possible that Dr. Leon received (via copy) or sent to IDX counsel material that was intended to be

**Calfo Decl. Page 4**
**CV03-1158P**

Kenneth Kieffer
January 7, 2004
Page 2

confidential. We have a duty to our client to employ measures to ensure that any such privileged material on the computer is not disclosed to third parties, including Dr. Leon's personal counsel.

With respect to any claim of privilege, we will provide a written log of the nature of the communication being withheld, including the date of the communication, the parties to the communication and the general subject matter of the communication. Obviously, to the extent that Dr. Leon disputes IDX's claim of privilege, Dr. Leon will have the right and opportunity to have the matter reviewed by Judge Pechman, who has the ultimate power to determine whether IDX may withhold any material.

Please confirm that the procedure outlined in this letter and its attachment is acceptable. We would like to begin the process of creating images early next week.

Sincerely,

Angelo J. Calfo

Enclosure

cc:    Ed Taylor (with enclosure)
       Reg Norberg (with enclosure)

Calfo Decl. Page 5
CV03-1158P

304.01 ea063602 1/7/04

## COMPUTER INVESTIGATIVE SERVICES (CIS)

## PROTOCOL FOR CREATING MIRROR IMAGES OF HARD DRIVE ON DR. MAURICIO LEON'S COMPUTER ISSUED BY IDX

CIS will receive a sealed box from counsel for Dr. Mauricio Leon, which is represented to contain the laptop computer issued to Dr. Leon by IDX Systems Corporation (IDX) in connection with Dr. Leon's employment. The box will be delivered to CIS's offices in Seattle. Dr. Leon's legal representatives will be permitted to observe implementation of the protocol below to the extent desired and feasible.

In connection with receipt of Dr. Leon's computer, CIS will perform the following services:

1.    CIS will obtain two identical new hard disk drives, and "wipe" each drive.

2.    CIS will test imaging a hard drive from a similar IDX laptop computer using the protocol set forth herein. Any alterations to this protocol based upon this test will be mutually agreed upon by IDX and Dr. Leon.

3.    CIS will open the box received from Dr. Leon's counsel and create a written inventory.

4.    CIS will power-on Dr. Leon's laptop computer to remove BIOS and hard drive password.

5.    CIS will remove the hard disk from Dr. Leon's laptop computer.

6.    CIS will connect the subject hard disk to EnCase "fastblock" physical write block device.

7.    CIS will then create an EnCase physical image file of Dr. Leon's hard disk.

8.    CIS will restore the hard disk image to each of the new identical hard drives. The EnCase software will verify that each restored drive is identical to the image file using MD5 hash values.

9.    In consultation with IDX counsel, CIS will search EnCase image file for possible privileged material.

10.    CIS will deliver the second hard drive to Dr. Leon's attorneys, after having removed any materials subject to a claim of privilege by IDX. CIS will remove only communications and other material determined to be privileged by IDX legal

## COMPUTER INVESTIGATIVE SERVICES (CIS)

## PROTOCOL FOR CREATING MIRROR IMAGES OF HARD DRIVE ON DR. MAURICIO LEON'S COMPUTER ISSUED BY IDX

counsel in consultation with IDX. All files withheld as privileged will be preserved.

11.    CIS, working with IDX and its counsel, will ensure that Dr. Leon is able to access all files on the hard drive delivered to Dr. Leon's counsel. Hard copies of files on the laptop will be provided to the extent inaccessible on the hard drive due to incompatible software applications, encryption or the like.

12.    CIS will re-assemble the laptop computer and deliver it to a trusted third party guardian agreeable to both IDX and Dr. Leon. The original hard drive will contain all information it contained when delivered to CIS, including any information designated as privileged by IDX.

13.    CIS will provide an affidavit as to the procedure followed.

# Exhibit B

## Angelo Calfo

**Subject:** FW: Dr. Leon's Computer

**From:** Kieffer, Ken [mailto:KKieffer@gth-law.com]
**Sent:** Wednesday, January 21, 2004 5:47 PM
**To:** Angelo Calfo; Malanca, Albert
**Cc:** Ed Taylor (E-mail)
**Subject:** RE: Dr. Leon's Computer

We have reluctantly decided to produce the laptop computer subject to the conditions and protocols attached to this string of emails, and on the further condition that IDX immediately reimburse Dr. Leon for the cost of shipping the laptop to us here in Tacoma ($152.29, and I will forward the invoice to you tomorrow). We must stress that we and Dr. Leon remain very concerned about possible interference with the integrity of the hard drive and the evidence it contains. Our concerns are borne of Dr. Leon's prior experiences with IDX, and experiences (some of which we heard about yesterday) that DOJ has encountered with IDX productions. We reiterate that the complete, pristine original hard drive must be delivered to Rob Stewart as soon as possible.

Would you please arrange for Mr. Norberg to contact Michael Christopher here in our Tacoma office in order to arrange for the transfer of the laptop, and to synchronize their schedules so that Michael may observe the replication/copying process in its entirety? Thanks.

Yesterday, we spent a good deal of time discussing privilege issues, and I promised you some citations. In Paragraph 33 of its November 18, 2003 Amended Answer, IDX takes the position that "conversations between Dr. Leon, a managerial employee of IDX, and Ms. Maylin, an attorney for IDX, are subject to the attorney-client privilege . . . ." IN CARNEGIE HILL FINANCIAL v. KRIEGER, 2000 U.S. Dist. LEXIS 21 AT 7, N. 2 (E. D. PA. 2000), the Court held as follows: "I conclude that the policy underlying attorney-client privilege and work product immunity would not be advanced by now denying former officers and directors of the corporation access to documents which are relevant to the issues tendered by Plaintiffs and which they could have seen upon request at any time." The Court in KRIEGER relies upon GOTTLIEB v. WILES, 143 F.R.D. 241, 247 (D. Colo. 1992), which in turn relies upon additional decisions.

Ken

-----Original Message-----
**From:** Angelo Calfo [SMTP:acalfo@yarmuth.com]
**Sent:** Tuesday, January 20, 2004 6:17 PM
**To:** Ken Kieffer (E-mail); Albert Malanca (E-mail)
**Cc:** Ed Taylor (E-mail)
**Subject:** Dr. Leon's Computer

Al & Ken,

It was a pleasure seeing you today. One of the things I agreed to follow up on in writing was our assurance to you that, under the protocol proposed by IDX for obtaining a mirror image of Dr. Leon's laptop (see attached), neither IDX nor Reg Norberg will perform any function to the computer that will alter the contents of the original hard drive. As noted, the original hard drive and computer will be escrowed with Robbie Stewart or some other mutually agreeable person pending the resolution of this case or agreement of the parties. This will be a control copy that can always be turned to in the event that either party is concerned about the integrity of the mirror images provided by Reg Norberg.

In addition, we agreed that Reg Norberg will print a directory of all files on the computer and

Calfo Decl. Page 9
CV03-1158P

provide that directory to both parties immediately upon making the mirror images.

Further, to the extent that any claim of privilege is asserted by IDX with respect to material on the laptop, we commit to providing you with a privilege log identifying each such communication and the nature of the communication. All non-privileged material will be provided to you and none will be withheld under our protocol. Our letter to you (see attached) outlines this commitment at page 2. If the parties have a dispute as to any privilege issue, it will ultimately be Judge Pechman's and not IDX's decision whether IDX can rightfully withhold the material.

Please let us know if we have resolved the issues surrounding the protocol for creation of the mirror images at your earliest convenience. Thank you.

Angelo J. Calfo
Yarmuth Wilsdon Calfo PLLC
Telephone: (206) 516-3872
Cell phone: (206) 229-3441
Fax: (206) 516-3888
Website: www.yarmuth.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

&lt;&lt;Ltr to Ken Kieffer re Dr. Leon computer protocol ('ea063602').doc&gt;&gt;  &lt;&lt;Ltr to Ken Kieffer (attachment) re laptop computer ('ea063603').doc&gt;&gt;  &lt;&lt; File: Ltr to Ken Kieffer re Dr. Leon computer protocol ('ea063602').doc &gt;&gt;  &lt;&lt; File: Ltr to Ken Kieffer (attachment) re laptop computer ('ea063603').doc &gt;&gt;

**Exhibit C**

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

CRAIG MALLORY HEATH,

Plaintiff,

No.  C01-1988Z

11
12

v.

ORDER

13

F/V ZOLOTOI, Official No. 625095, her
engines, tackle, and appurtenances,

14

*In Rem,*

15
16
17

GORDON BLUE; JOHN YOUNG; JOHN
JORGENSON; ZOLOTOI GENERAL
PARTNERSHIP; and TANADGUSIX (TDX)
CORPORATION,

*In Personam,*

18
19

This matter comes before the Court on Plaintiff's Motion for Sanctions, docket no. 95.

20

The Court considered the briefs submitted by the parties and the oral arguments of counsel

21

on April 28, 2004, and the Court being fully advised, makes the following ORDER:

22

**BACKGROUND**

23

Plaintiff's Motion for Sanctions, docket no. 95, arises from the law firm Young

24

deNormandie & Oscarsson's ("the Young firm") failure to disclose witness statements to the

25

plaintiff and co-defendant Central Bering Sea Fishermen's Corporation ("CBSFC").  The

26

Young firm represents defendants Gordon Blue, Zolotoi General Partnership, Alaska

ORDER   -1-

1  Offshore, LLC, Orca Fisheries, Inc., and PBS Vessel Management, Inc.[1]  CBSFC, the only

2  partner not represented by the Young firm, is represented by Bauer Moynihan & Johnson.

3  Plaintiff seeks a finding of liability against all defendants.[2]

4         This action arises from the alleged injuries plaintiff received on or about January 28,

5  1999, while working as a seaman on board the crab vessel, the F/V ZOLOTOI.  Second Am.

6  Compl., docket no. 23, ¶ 6.1.  The witness statements in question were given on January 29,

7  1999, one day after the accident, by Jon E. Jorgenson, the captain of the vessel, and two

8  crew members, Daniel S. Brown, and Rick Edgemon.  Edwards Decl., docket no. 108, Ex. B.

9  Defendant Gordon Blue[3] described the circumstances from which these statements were

10  taken in his recent deposition:

11         Q: Are there any statements from the crewman, actually handwritten
            statements from the crewman?
12
            A: We had our forms.                    * * * *
13
            Q: Well, what's the procedure in terms of documentation after an accident like
14         this?

15         A: We have forms aboard the vessel for the documentation of accidents.  I
            think there was a Coast Guard form which is filed with the Coast Guard, and
16         they include forms which are sent – brought to the office and forwarded to the
            underwriters in this case.
17
                                                    * * * *
18         Q: Who asked the crewmen to sit down and - -

19         A: Captain.

20         Q: So Jon Jorgenson, shortly after the accident, would have asked each of the
            crewmen who has something to say, put it down in writing and sign your name
21         to it, correct?

22  _____

23         [1]Defendants John Young, John Jorgenson, Zolotoi Management, Inc., and Tanadgusix
24  Corp., who were represented by the Young firm, have been dismissed from this action.  See
    docket nos. 53, 86, 89.

25         [2]In Rem defendant F/V Zolotoi has not been served and is not presently before the court.

26         [3]Gordon Blue is the President and sole shareholder of Zolotoi Management, Inc., a
    general partner of the Zolotoi General Partnership.

ORDER  -2-

1       A: That's right.

2       Q: What's the reason that you do that on a vessel?

3       A: So there's a record of what happened.

                            * * * *

4       Q: Who put into the procedure that statements are to be taken by crew
5       members who saw something?

6       A: Oh. Well, I don't think that's anything different than the general practice in
        the industry. It's my understanding what's to be done, and it's what we all do.

7
                            * * * *
8       Q: Where are those statements sent? What's done with them? What is done
        with the statements from the crew?

9
        A: I keep them at the office, make them available to the claims adjusters and
10      give them to the attorneys.

11      Q: So the whole process is just part of the normal operations procedure for this
        vessel and the industry, as far as you know.

12
                            * * * *
13      A. I guess so. . . .

14                          * * * *

        Q: . . . . In the management of the vessel ZOLOTOI, is the taking of statements
15      and keeping of statements in your office the normal course of business?

16      A: Yes.

17
        Blue Dep., docket no. 140, at 50:14 - 50:25, 58:5 - 58:20, 59:1 - 59:14, 60:1 - 60:4.
18
            At some point, these witness statements were obtained by the Zolotoi General
19
        Partnership's insurance carrier and were placed in an adjuster's file. This action was filed on
20
        December 6, 2001. Compl., docket no.1. At oral argument, the Young firm admitted it
21
        obtained the adjuster's file and these statements in early 2002, shortly after the Young firm
22
        appeared of record for Tanadgusix Corporation on March 21, 2002, see docket no. 7, and for
23
        defendant Young on April 30, 2002, see docket no.11. The Court concludes based on the
24
        admission of counsel and other court records that the Young firm had possession of these
25
        documents by April 2002.
26

ORDER  -3-              Calfo Decl. Page 14
                       CV03-1158P

1    In May 2003, plaintiff served Interrogatories and Requests for Production of

2 Documents on the Young firm.  Balluff Decl., docket no. 107, ¶ 2.  With the exception of

3 defendant Gordon Blue, the other defendants objected to plaintiff's discovery requests but

4 produced some documents in July 2003.  Id. ¶ 3; Ex. A at 12.  Defendant Blue refused to

5 answer the discovery requests for fear that providing answers would waive his defense of

6 lack of personal jurisdiction.  Id. ¶ 3; Ex. D.  The pertinent discovery requests propounded

7 by plaintiff and the Young firm's responses are as follows:

8
    **REQUEST FOR PRODUCTION NO. 7: Any and all documents**
9    **pertaining to plaintiff's accident and injury.**

10   RESPONSE (Gordon Blue dated June 13, 2003): Objection.  Overbroad,
     vague, calls for documents protected by the work-product and attorney/client
11   privileges.[4]

12   RESPONSE (PBS, Orca, Alaska Offshore dated July 2, 2003): Objection.  This
     Request for Production is overbroad, burdensome and seeks information
13   protected by the attorney-client and attorney-work product doctrines.  Without
     waiving these objections, Defendant responds as follows: See documents
14   produced.[5]

15   **REQUEST FOR PRODUCTION NO. 9: Any statements, either written,**
     **taped, transcribed or communicated in any fashion of persons with**
16   **knowledge, either direct or indirect, of the incident described in plaintiff's**
     **Complaint.**
17
     RESPONSE (Gordon Blue dated June 13, 2003): Objection.  Calls for
18   documents protected by the work product and attorney/client privileges.[6]

19   RESPONSE (PBS, Orca, and Alaska Offshore dated July 2, 2003): Objection.
     This Request for Production seeks information that is protected by the
20   attorney-client and attorney-work product doctrines.[7]

21    Plaintiff subsequently filed a motion to compel on August 29, 2003.  Pl.'s Mot. to

22 Compel, docket no. 65.  The Court granted plaintiff's motion on November 26, 2003:

23   ————————————————

24   [4]Kohles Decl., docket no. 96, Ex. 5 at 6.

25   [5]Id., Exs. 11 at 6, 13 at 6, 15 at 6.

26   [6]Id., Ex. 5 at 6-7.

     [7]Id., Exs. 11 at 7, 13 at 7, 15 at 7.

ORDER  -4-

1          Plaintiff's Motion to Compel Answers to Discovery to Gordon Blue, docket
2    no. 65, is GRANTED.  Gordon Blue is directed to provide Plaintiff with
     complete and verified responses to the interrogatories and requests for
3    production.

4    Minute Order, docket no. 86.  Despite the Court's Order to provide "complete" responses,

5    the Young firm continued to object to the production of certain documents:

6

7    **REQUEST FOR PRODUCTION NO. 7: Any and all documents
     pertaining to plaintiff's accident and injury.**

8

9    SUPPLEMENTAL RESPONSE (Gordon Blue dated January 16, 2004):
     Objection.  This Request for Production is overbroad, burdensome and seeks
10   information protected by the attorney-client and attorney-work product
     doctrines.  Without waving these objections, Defendant responds as follows:
11   See documents produced.[8]

12   **REQUEST FOR PRODUCTION NO. 9: Any statements, either written,
     taped, transcribed or communicated in any fashion of persons with
13   knowledge, either direct or indirect, of the incident described in plaintiff's
     Complaint.**

14
     SUPPLEMENTAL RESPONSE (Gordon Blue dated January 16, 2004):
15   Objection.  This Request for Production seeks information that is protected by
     the attorney-client and attorney-work product doctrines.[9]

16

17         The Young firm did not produce the witness statements in question in its initial

18   disclosures or its responses to plaintiff's discovery requests, despite this Court's Order

19   compelling "complete" responses to these routine discovery requests.  The Young firm

20   totally failed to even acknowledge the existence of these statements until the end of

21   discovery.   Furthermore, the Young firm did not produce a privilege log for the documents

22   that it alleged were protected by the attorney-client and work-product privileges.  Plaintiff

23   and defendant CBFSC first learned that the defendants had statements written by crew

24   members at the deposition of Gordon Blue on January 23, 2004, which was on the eve of the

25   ———————————————

26       [8]Kohles Decl., docket no. 96, Ex. 7 at 6.

         [9]Id. at 6-7.

ORDER  -5-
               Calfo Decl. Page 16
               CV03-1158P

1    February 1, 2004 discovery cut-off.  Kohles Decl., docket no. 96, at 2; Pereyra Decl., docket

2    no. 101, ¶ 6.

3        After learning of their existence, plaintiff's counsel immediately requested copies of

4    the witness statements.  Kohles Decl., docket no. 96, at 2.  Ginger Edwards, counsel from the

5    Young firm, however, re-asserted the Young firm's objection that the documents were

6    privileged under the attorney-client and work-product privileges.  Blue Dep., docket no. 140,

7    at 52:25 - 54:5.  Ms. Edwards even objected to plaintiff learning which crew members gave

8    statements.  Id. at 51:6 - 9.  Plaintiff's counsel cautioned Ms. Edwards that,

9

10        [I]f you have the statements, let's have them, or else I'll bring a motion for
         terms, we'll be reconvening this deposition and Mr. Blue back down here to
11        Seattle for it, and it's going to be on your dime, or I'm going to move to strike
         all of your defenses.

12

13    Id. at 53:11 - 16.  Despite this warning, the Young firm again re-asserted the attorney-client

14    and work-product privileges.  Id. at 54:2 - 5. This Motion for Sanctions followed.

15    **DISCUSSION**

16        Sanctions against CBSFC are not appropriate.  The declarations submitted

17    demonstrate that CBSFC did not have knowledge of the existence of the witness statements

18    and did not participate in the Young firm's decision to withhold them.

19        However, the Court finds that sanctions against the Young firm and its clients are

20    appropriate because the Young firm asserted frivolous privileges, failed to disclose the

21    existence of the witness statements despite obligations imposed by the Federal Rules of Civil

22    Procedure and this Court's Order, failed to provide a privilege log, and failed to conduct any

23    investigation into the creation of the statements and the current state of the law on privileges.

24        (1) Attorney-Client Privilege

25        Under the attorney-client privilege, confidential communications made by a client to

26    an attorney to obtain legal services are protected from disclosure.  Fisher v. United States,

1   425 U.S. 391, 403 (1976); United States v. Hirsch, 803 F.2d 493, 496 (9th Cir. 1986). This

2   privilege applies when "necessary to achieve its limited purpose of encouraging full and

3   frank disclosure by the client to his or her attorney." Clark v. Am. Commerce Nat'l Bank,

4   974 F.2d 127, 129 (9th Cir. 1992). The crew members who prepared the contemporaneous

5   statements were not represented by counsel, nor was an attorney present when the statements

6   were made. No attorney ever asked that these statements be prepared. There is simply no

7   basis to claim these statements were made by a client to an attorney. The Young firm's

8   claims of attorney-client privilege are frivolous, as they have no basis in fact or law. At oral

9   argument in late April counsel for the Young firm abandoned any claim under the attorney-

10  client privilege.

11      (2) Work-Product Doctrine

12      The witness statements are not protected work-product. The work-product doctrine

13  protects trial preparation materials that reveal an attorney's strategy, intended lines of proof,

14  evaluation of strengths and weaknesses, and inferences drawn from interviews. See

15  Hickman v. Taylor, 329 U.S. 495, 511 (1947). Work-product protection applies to

16  "documents and tangible things prepared in anticipation of litigation or for trial" by or on

17  behalf of a party. FED. R. CIV. P. 26(b)(3) (emphasis added). The burden is on the party

18  asserting a work-product privilege to show that the withheld information was prepared in

19  anticipation of litigation. "More than the mere possibility of litigation must be evident" for

20  materials to be considered immune from discovery under the work-product doctrine. See

21  Detection Sys., Inc. v. Pittway Corp., 96 F.R.D. 152, 155 (W.D.N.Y. 1982). It is well

22  established that documents prepared in the ordinary course of business are not protected by

23  the work-product doctrine because they would have been created regardless of the litigation.

24  See FED. R. CIV. P. 26(b)(3), Advisory Committee Notes ("Materials assembled in the

25  ordinary course of business . . . are not under the qualified immunity provided by this

26  subsection."); United States v. Adlman, 134 F.3d 1194, 1202 (2nd Cir. 1998)(even if

1  documents prepared in the ordinary course of business might also be helpful in preparation

2  for litigation, they do not qualify for protection); Tayler v. Travelers Ins. Co., 183 F.R.D. 67,

3  69–70 (N.D.N.Y. 1998) (generally, there is no work-product immunity for documents

4  prepared in ordinary course of business).

5     The deposition of Gordon Blue demonstrates that the statements were given one day

6  after the accident on standard forms aboard the vessel.  Moreover, defendant Blue testified

7  that taking witness statements following an accident of this type was the normal practice of

8  the vessel.  These admissions establish that the statements were prepared in the ordinary

9  course of business, not in "anticipation of litigation."

10     The Young firm asserts that Karen Balluf, the attorney who made the decision to

11  withhold these documents, had "the understanding" that the witness statements were created

12  as a result of a request by the insurance adjuster.  In support, the Young firm points to the

13  Declaration of Karen Balluf, which states:

14

15     The statements were from the Captain and two of the crew members on board
       the F/V Zolotoi the day the plaintiff was injured.  The file indicates that the

16     adjuster requested the statements.  The three statements were found only in the
       adjuster's file and were not found in documents produced by Defendant.

17

18  Balluf Decl., docket 107, ¶ 12.  The Young firm also produced copies of the adjuster's file

19  during oral argument to demonstrate that the witness statements were created pursuant to a

20  request by the adjuster, not in the ordinary course of business.  Submitted to the Court was

21  an "Acknowledgment," dated February 3, 1999, which sets forth the preliminary facts

22  surrounding the accident, and concludes, "We have requested injury reports and will

23  continue our investigation into the incident."  Docket no. 141.  This hearsay evidence, even

24  if considered, however, does not contradict the testimony of Gordon Blue.  That the adjuster

25  requested injury reports does not prove that the statements were taken pursuant to such

26

ORDER  -8-

Calfo Decl. Page 19
CV03-1158P

1   requests. Indeed, Gordon Blue testified that he "make[s] [the witness statements] available

2   to the claims adjusters." Blue Dep., docket no. 140, at 59:2 - 4.

3          Even if the adjuster had requested that the witness statements be taken, this does not

4   trigger the work-product doctrine. Defendants do not cite, nor can the Court locate, any

5   authority that supports the broad proposition that documents prepared at the request of an

6   insurance adjuster are made "in anticipation of litigation." Indeed, it has been recognized

7   that,

8          The majority of cases that have dealt with the issue of whether investigative
           materials prepared by insurance claims adjusters is work-product prepared in
9          anticipation of litigation have held that since insurance companies have a
           routine duty to investigate accidents, such materials are not prepared in
10         anticipation of litigation but are prepared in the ordinary course of business
           absent unique circumstances showing the contrary.

11

12   Schmidt v. California State Auto. Ass'n, 127 F.R.D. 182, 184 (D. Nev. 1989).

13         The Court finds the Young firm's conduct egregious. The claims of privilege were

14   frivolous. A reasonable investigation into the circumstances of the creation of these

15   statements would have made clear that these statements are not privileged under the attorney-

16   client or work-product privileges. Had the Young firm simply taken the time to discuss these

17   statements with their client, defendant Blue, it would have been patently clear that these

18   documents should be produced. The Young firm argues that the decision to withhold these

19   documents was made in good faith. The Court rejects this argument. As early as April 2002,

20   any reasonable inquiry into the origin of these statements would have revealed that they were

21   created in the ordinary course of business and were not privileged. The Young firm failed in

22   good faith to conduct any investigation into the circumstances surrounding the creation of

23   these statements. Further, the fact that the Young firm claimed the attorney-client privilege,

24   when there is not even a scintilla of evidence that an attorney was even involved in the

25   creation of these statements, alone demonstrates bad-faith.

26

Calfo Decl. Page 20
CV03-1158P

1      (3) <u>Duty to Disclose</u>

2          The Federal Rules of Civil Procedure and this Court's Order required the Young firm

3      to produce these witness statements.  First, these statements should have been produced in

4      the parties' initial disclosures.  FED. R. CIV. P. 26(a)(1)(B) requires a party to provide "a

5      copy of, or a description by category and location, of all documents, data compilations, and

6      tangible things in the <u>possession, custody, or control</u> of the party and that the disclosing party

7      <u>may use to support its claims or defenses</u> . . . ."  (Emphasis added).  The deadline for serving

8      initial disclosures was September 18, 2002.  Minute Order, docket no. 21.  As the Young

9      firm had possession of the witness statements as early as April 2002, these statements should

10     have been produced in September 2002.  The Young firm's current contention that the

11     defendants do not plan to rely upon the statements at trial does not relieve them of the

12     obligation they had to produce these statements.  The rules refer to materials that a disclosing

13     party "may use to support . . . [its] defenses."  As the Young firm conceded at oral argument,

14     at least one statement, the statement given by Jon Jorgenson, arguably supports the

15     defendants' contributory negligence defense.  Accordingly, the statements should have been

16     produced or a description of the statements should have been provided to the plaintiff in the

17     Young firm's initial disclosures.

18         Second, the Young firm had a duty to produce the witness statements pursuant to the

19     plaintiff's valid requests for production.  Upon request, the Federal Rules of Civil Procedure

20     require a party to disclose "discovery regarding any matter, not privileged, that is relevant to

21     the claim or defense of any party."  FED. R. CIV. P. 26(b)(1).  The witness statements that the

22     Young firm failed to produce unquestionably fall within the scope of the documents

23     requested by the plaintiff.  Plaintiff's Request for Production No. 7 asked for "any and all

24     document pertaining to plaintiff's accident and injury."  Further, Plaintiff's Request for

25     Production No. 9 asked for "any statements, either written, taped, transcribed or

26     communicated in any fashion of persons with knowledge, either direct or indirect, of the

ORDER  -10-                    Calfo Decl. Page 21
                               CV03-1158P

1 incident described in plaintiff's Complaint." Because these statements were given by

2 witnesses who observed the accident in question, these statements are undoubtedly relevant

3 to the plaintiff's claims. Because the Young firm could not in good faith believe that the

4 asserted privileges were valid, it had an absolute duty under the Federal Rules of Civil

5 Procedure to disclose these statements.

6      Third, this Court's Order compelling discovery, docket no. 86, entered on November

7 26, 2003, required "complete" responses. Among other things, the plaintiff requested relief

8 because "[t]he privilege objections of Defendant [Gordon Blue] are incomplete and lack

9 requisites pursuant to the rules, specifically a listing of the withheld documents and

10 information, including information vital in investigating persons with knowledge about the

11 accident." Pl's Mot. Compel, docket no. 65, at 4. The Court finds that the Young firm's

12 failure to subsequently produce the witnesses statements was a violation of the Court's Order

13 to Compel.

14      The Young firm's conduct in failing to produce these statements is compounded by its

15 failure to create and produce a privilege log. Had the Young firm created a privilege log, the

16 prejudice to the plaintiff could have been averted. The Young firm argues that the practice in

17 this community is that if a lawyer believes a document is privileged, no disclosure of the

18 documents or obligation to create a privilege log exists. In other words, the Young firm

19 argues that if an attorney subjectively believes a document may be privileged there is no

20 obligation to even disclose the existence of the document much less provide a privilege log.

21 This is not the standard of practice in the Western District of Washington. Even assuming

22 such a practice existed, the Federal Rules of Civil Procedure cannot be replaced by

23 community custom. The Rules place an absolute and unequivocal duty on the party

24 withholding discovery to create a privilege log:

25

26      When a party withholds information otherwise discoverable under these rules
     by claiming that it is privileged or subject to protection as trial preparation

ORDER  -11-

Calfo Decl. Page 22
CV03-1158P

material, the party shall make the claim expressly and **shall** <u>describe the nature
of the documents . . . that . . . will enable other parties to assess the
applicability of the privilege or protection.</u>

FED. R. CIV. P. 26(b)(5) (emphasis added). The burden is on the party asserting a privilege
to show it was prepared in "anticipation of litigation" or that it is subject to an attorney-client
privilege. The Young firm asserts that plaintiff was put on notice that it was withholding
witness statements because it informed plaintiff that the adjuster's file had been reviewed
and the non-privileged documents had been produced. This is not enough; the Federal Rules
of Civil Procedure and this Court require more. The Young firm had an obligation to create
a privilege log that would have disclosed that the Young firm was withholding witness
statements and the nature of any asserted privilege. This would have enabled the plaintiff to
assess the applicability of any asserted privileges.

Even after this Motion for Sanctions was filed and the statements had been finally
produced, the Young firm continued to resist its obligation to produce them. In the Young
firm's response of February 23, 2004, docket no. 106, the firm argued that "the Federal Rules
of Civil Procedure did not require Blue to provide the information requested by Plaintiff, nor
did the Court's November 26, 2003, Minute Order. Response, docket no. 106, at 2. In
addition, the Young firm argued that "Blue's failure to produce the witness statements were
both justified and harmless." <u>Id.</u> The Young firm further argued that "defendants had
substantial justification for not producing the crew statements." <u>Id.</u> at 10. These arguments
violate Rule 11, constitute frivolous arguments and have continued to increase the cost of
this litigation.

(4) <u>Sanctions</u>

The Court finds that sanctions are appropriate. The Federal Rules of Civil Procedure
and this Court's earlier Order placed a duty on the Young firm to produce the witness
statements. The Young firm could not have believed in good faith that its asserted privileges
were valid. Any inquiry by the Young firm to their own client, defendant Blue, would have

ORDER  -12-

1  disclosed the circumstances surrounding the creation of the statements. Moreover, even if

2  the Young firm still believed a privilege existed, the defendants had the burden to create a

3  privilege log for the documents withheld. The Young firm's withholding of these documents

4  was in bad faith and is a blatant abuse of the discovery process.

5      Rule 37(c)(1) permits a district court, in its discretion, to enter a default judgment

6  against "[a] party that without substantial justification fails to disclose information required

7  by Rule 26(a) or 26(e)(1) . . . ."  FED. R. CIV. P. 37(c)(1) (permitting courts to impose

8  sanctions authorized in Rule 37(b)(2)(C)). Moreover, federal courts have inherent power to

9  impose sanctions against both attorneys and parties for bad faith conduct in litigation or for

10  willful disobedience of a court order. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991);

11  Roadway Express, Inc. v. Piper, 447 U.S. 752, 764–66 (1980). The courts' inherent powers

12  "are governed not by rule or statute but by the control necessarily vested in courts to manage

13  their own affairs so as to achieve the orderly and expeditious disposition of cases."

14  Chambers, 501 U.S. at 43.

15      The Young firm's discovery abuses and violation of this Court's Order warrant a

16  finding of liability against the defendants represented by the Young firm. See e.g., In re

17  Exxon Valdez, 102 F.3d 429, 432–33 (9th Cir. 1996) (dismissal appropriate where party

18  failed to respond to discovery requests, despite court orders to respond); Anheuser-Busch v.

19  Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995) (dismissal appropriate where "a

20  party has engaged deliberately in deceptive practices that undermine the integrity of judicial

21  proceedings"); Henry v. Gill Indus., Inc., 983 F.2d 943, 946–47 (9th Cir. 1993) (dismissal

22  appropriate for "repeated and flagrant" discovery abuses); North Am. Watch Corp. v.

23  Princess Ermine Jewels, 786 F.2d 1447, 1451 (9th Cir. 1986) (dismissal appropriate for

24  concealing documents and violating court orders).

25      In deciding whether a sanction of dismissal or default is appropriate, the Court must

26  weigh five factors: (1) the public's interest in expeditious resolution of litigation; (2) the

Calfo Decl. Page 24
CV03-1158P

1  court's need to manage its docket; (3) the risk of prejudice to the opposing party; (4) the

2  public policy favoring disposition of cases on their merits; and (5) the availability of less

3  drastic sanctions.  Payne v. Exxon Corp., 121 F.3d 503, 507 (9th Cir. 1997).  Where a court

4  order is violated, the first and second factors will favor sanctions and the fourth will cut

5  against them.  Id.

6        Having found that the Young firm violated this Court's earlier Order compelling

7  "complete" responses, the first and second factors favor sanctions.  The third factor also

8  supports the imposition of severe sanctions.  This case has been pending since December 6,

9  2001; the trial date is June 1, 2004; the discovery cut-off was February 1, 2004; and the

10  existence of the documents were not disclosed until January 23, 2004.  Plaintiff has been

11  greatly prejudiced because he has proceeded through this litigation for over two years

12  without knowledge of material information.  Plaintiff hired an expert witness on the issue of

13  liability.  The expert prepared a report based on plaintiff's testimony alone.  Now after

14  discovery is complete, witness statements that were created within twenty-four hours of the

15  accident appear.  The defendants cannot wait from December 2001 (when the action was

16  filed) until late February 2004 (well over two years) to first disclose these statements.

17        Further, with respect to the fifth factor, the Court finds that less drastic sanctions

18  would be inappropriate.  The Young firm has urged the Court to consider monetary sanctions

19  against the firm.  It argues that its clients should not suffer from its counsel's conduct.

20  Monetary sanctions, however, are inadequate.  The Young firm's discovery abuses are

21  egregious and have vitiated the basic tenants of the discovery process.  Simply assessing

22  monetary sanctions does not adequately ensure future compliance with the Federal Rules of

23  Civil Procedure.  The Court is concerned that such sanctions would create an incentive for

24  law firms and parties to make a calculated decision to engage in discovery abuse.  Parties and

25  their counsel should not be encouraged to weigh the benefits of withholding discoverable

26  information against the risk of sanctions for non-disclosure in the event the abuse is

ORDER  -14-

1  discovered.  The Court believes that the only adequate deterrent in this case under all the

2  circumstances is a finding of liability against the defendants represented by the Young firm.[10]

3          Accordingly, the Court hereby enters a finding of liability against defendants Gordon

4  Blue, Zolotoi General Partnership, Alaska Offshore, LLC, Orca Fisheries, Inc., and PBS

5  Vessel Management, Inc., who are represented by the Young firm, as sanctions for the

6  Young firm's conduct. The only triable issue that remains for the trial scheduled on June 1,

7  2004, against these defendants is the issue of damages.  The issue of liability against CBSFC

8  shall remain for trial.  Plaintiff is further awarded sanctions against the Young firm in the

9  amount of $25,000.  These sanctions shall be paid within 10 days of this Order.

10         IT IS SO ORDERED.

11         DATED this 12th day of May, 2004.


                                        /s/ Thomas S. Zilly
                                        _____
                                        THOMAS S. ZILLY
                                        UNITED STATES DISTRICT JUDGE

---

[10]As previously noted, sanctions against CBSFC are not appropriate.

ORDER  -15-

Calfo Decl. Page 26
CV03-1158P