THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAURICIO A. LEON, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> IDX SYSTEMS CORPORATION, a Vermont corporation, <br><br> Defendants. | NO. CV03-1158P <br><br> PLAINTIFF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 211) <br><br> ORAL ARGUMENT REQUESTED <br><br> HEARING DATE: SEPTEMBER 10, 2004 |

[The whistleblower protection provisions of 31 U.S.C. §3730(h)] only protect employees who have acted 'in furtherance of an action' under the [False Claims Act ("FCA")]. Specific awareness of the FCA is not required. However, the plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action.

*U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).

## INTRODUCTION

Dr. Mauricio Leon, plaintiff in this action, has moved for a partial summary judgment that, pursuant to §3730(h):

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

(1) Dr. Leon engaged in activity protected under §3730(h); and

(2) Defendant IDX knew that Dr. Leon engaged in that protected activity.

The extensive briefing concerning these issues has established that, if Dr. Leon was engaged in protected activity, IDX was completely aware of his actions. The nub of the dispute, then, has been reduced to whether Dr. Leon in good faith believed, and whether a reasonable employee in the same circumstances might believe, that IDX was "possibly committing fraud against the Government." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 265 F.3d 838, 845 (9th Cir. 2002). With those issues as the Court's focus, the record demonstrates that there are no genuine issues of material fact and that, as a matter of law, Dr. Leon's Revised Motion for Partial Summary Judgment should be granted.

## IDX IS IMPERMISSIBLY SEEKING TO LITIGATE ITS DEFENSE TO AN APPARENT QUI TAM LAWSUIT IN THIS WHISTLEBLOWER RETALIATION LITIGATION

Dr. Leon has consistently declined to take any position on the issue of whether he has filed a *qui tam* action concerning the SAGE project. IDX has just as consistently publicized its belief that such a *qui tam* action is pending, and that it has been on file since late 2002. *See, e.g.*, ¶19 of IDX's November 18, 2003 Counterclaims (as the Court is aware, IDX's counterclaims have now been dismissed). IDX has devoted an inordinate amount of its opposition to Dr. Leon's current motion to rehearsing IDX's purported defenses to that apparent *qui tam* action.

IDX may someday have an opportunity, *inter alia*, to defend against the merits of a full-blown False Claims Act litigation, brought either by the United States of America or by a relator; to debate the issue of whether *scienter* is a necessary predicate to establishment of a False Claims Act cause of action; and to litigate issues concerning the procedural and substantive niceties of how, and whether, the Government might approve IDX's course of conduct concerning SAGE. IDX, however, has simply picked the wrong forum to raise those

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

issues. As discussed more fully in Dr. Leon's opening Motion (Docket No. 211) at 17-20, in this litigation Dr. Leon "need only show that he had reasonably based suspicions of a false claim." *Moore, supra,* 275 F.3d at 845.

### DR. LEON HAD A SUBJECTIVE AND OBJECTIVELY REASONABLE BELIEF THAT IDX WAS ENGAGING IN FRAUDULENT AND ILLEGAL ACTIVITY

On the one hand, IDX purports to engage in a painstaking analysis of Dr. Leon's whistleblowing activities. IDX concludes that neither Dr. Leon nor any other reasonable person could conceivably conclude that *any* of Dr. Leon's activities were in any way undertaken in furtherance of an investigation of whether IDX was potentially engaged in fraud.

On the other hand, however, IDX itself has admitted that:

- "The company believes the employee has likely filed an action under the Federal False Claims Act under seal in the Federal District Court for the Western District of Washington with respect to his claims, sometimes referred to as a 'qui tam' complaint."[1]

- "**Prompted by the employee's allegations** the Civil Division of the U.S. Attorney's Office in Seattle, Washington in conjunction with the U.S. Commerce Department, OIG, is investigating whether the Company made false statements in connection with the application for the project award from NIST."[2]

- "The U.S. Commerce Department, Office of Inspector General is presently conducting an audit of the SAGE project."[3]

---

[1] This quote is taken from IDX's most recent 10-Q filing with the United States Securities and Exchange Commission. See Exhibit 8 to the Declaration of Kenneth G. Kieffer, attached to Dr. Leon's Motion (Docket No. 211).

[2] *Id.* (emphasis added).

[3] *Id.*

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

- Since February, 2004, the Federal Government has suspended all payments under the SAGE grant as a result of NIST's concerns about (1) SAGE labor billing practices, and (2) Carecast contribution and valuation issues.[4]
- Dr. Leon respectfully directs the Court to Paragraphs 3-4 of the attached Declaration of Ken Kieffer for a discussion of additional CONFIDENTIAL matters.

Those overwhelming admissions by IDX are more than sufficient to supply the foundation for a determination that Dr. Leon's whistleblowing activities were undertaken in furtherance of a potential FCA claim. Indeed, according to IDX, Dr. Leon in fact filed such a claim in 2002, shortly after Dr. Leon brought IDX's potentially illegal activities to IDX's attention. In all candor, the apparent seal upon the *qui tam* action alleged by IDX hamstrings Dr. Leon in presenting a full and fair explanation of how his whistleblowing activities were undertaken in absolute furtherance of an FCA claim. Pursuant to ER 402, and pursuant to whatever confidentiality provisions the Court deems necessary, it is appropriate for the Court to take judicial notice of all filings, if any, in any *qui tam* action involving SAGE and IDX.

The record before this Court goes far beyond IDX's express admissions concerning the direct relationship between Dr. Leon's whistleblowing activities, a potential *qui tam* action, and a flurry of formal Federal Government investigations into SAGE. Many of the facts underlying Dr. Leon's motion are set forth at pp. 3-15 of the motion (Docket No. 211) and, with only limited exceptions, plaintiff will not repeat those facts here. In light of IDX's opposition to the motion, however, a few of the more salient facts set forth in Dr. Leon's moving papers have assumed even greater importance.

---

[4] IDX's Motion to strike references to the suspension of SAGE payments is addressed at pp. 8-9 of this brief.

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

One of Dr. Leon's key allegations centers on IDX's conduct concerning the contribution and the valuation of a Carecast software license. Could a reasonable person have concluded that Dr. Leon raised good faith subjective and objective concerns about those issues? At page 14 of Dr. Leon's moving papers, Dr. Leon describes how Sullivan & Powers, then IDX's SAGE-related auditor, and Tina Bissonette, IDX's Comptroller, were embroiled *during 2002 and 2003* in discussions about Sullivan & Powers' "concerns that the software license was not eligible for reimbursement under the grant." See Exhibit 14 to the Kieffer Declaration filed in support of the moving papers. Moreover, IDX was so concerned about the Carecast license reimbursement during 2002 that IDX set up a "worst case scenario" reserve account concerning the questioned Carecast costs. See Exhibits 15 and 16 to the Kieffer Declaration filed in support of plaintiff's moving papers. In text and exhibits, IDX filed hundreds of pages in opposition to the current motion. It speaks volumes that IDX devoted not one word to an explanation of the Bissonette-Sullivan, Powers Carecast concerns, or to the well-funded reserve account set up to guard against the "worst case scenario." Dr. Leon's concerns about Carecast were well-founded—and IDX knows it.

Another of Dr. Leon's key accusations centered on IDX's sloppy and potentially illegal labor billing practices. At pages 12-13 of the moving papers, Dr. Leon informed the Court that Rodney Wright, the IDX/SAGE employee in charge of compiling SAGE hours for reporting to NIST, expressed severe reservations about the labor billing practices in an August 15, 2002 memorandum:

> Method and criteria for reporting current Carecast development hours to the SAGE project is poorly defined. Lack of traceability between hours reported and actual SAGE work products may result in NIST program non-compliance and audit penalties.

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

See Exhibit 11 to the Kieffer Declaration filed in support of the moving papers. Did Mr. Wright deny these statements in IDX's opposition to the current motion? Of course not, for he could not. In fact, Mr. Wright's insightful analysis of SAGE's labor billing practices provides more than enough objective basis for Dr. Leon's subjective belief that those practices were illegal and comprised the basis for a potential FCA claim.

Actions taken by IDX in direct response to Dr. Leon's continuing whistleblowing activities, however, also provide powerful evidence in support of the subjective and objective validity of those activities. As Dr. Leon brought his concerns to IDX's attention, did IDX dismiss Dr. Leon's accusations as meaningless, and devoid of good faith and any objective basis whatsoever? Of course not. Consider, for example, only the following few examples of IDX's contemporaneous reactions to Dr. Leon's whistleblowing activities:

- On July 23, 2002, a week to the day after Dr. Leon's detailed July 16, 2002 communication with Mr. Krassner, Mr. Krassner told Dr. Leon that "We have decided to engage an independent firm to assist [us] in reviewing and auditing the processes and work documentation related to the SAGE project to determine if there are any inaccuracies or incorrect procedures in place that we can either address or that need to be corrected." Exhibit 1 to the Second Declaration of Kenneth G. Kieffer, filed in support of this Reply.

- The independent firm chosen by IDX to perform these review and audit functions was Jackson Lewis, a national law firm which represents exclusively management in employment matters. On August 1, 2002, Kathleen Maylin of Jackson Lewis interviewed Dr. Leon and a number of other IDX employees concerning, *inter alia*, SAGE-related issues raised by Dr. Leon. Ms. Maylin's investigation covered not only billing errors, but also concerns about Carecast. Exhibit 2 (at pp. 38-44, 65-69) to the Second Kieffer Declaration.

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

- On October 18, 2002, Dr. Leon sent Mr. Krassner a detailed list of accusations concerning improprieties and illegalities in the SAGE. See Exhibit 4 to the Kieffer Declaration in Support of this motion. On October 29, 2002, Mr. Krassner wrote to Dr. Leon as follows (emphasis added):

  > **Thank you for your message of October 18th, which we assure you we are taking seriously.** Even though we find numerous factual inaccuracies and unfounded opinions, **we are undertaking a further review of aspects of the SAGE project, and we may determine that a further response to you is warranted.**

  See Exhibit 5 to the Kieffer Declaration filed in support of this motion.

  That same day, Michelle Blue, another high-ranking IDX executive, wrote to Dr. Leon and thanked him for his October 18, 2002 email, "which we assure you [IDX is] taking seriously." Exhibit 5 to the Kieffer Declaration filed in support of this motion.

- Within the next few weeks, Ms. Blue herself conducted yet another investigation of Dr. Leon's whistleblowing activities. See Exhibit 3 to the Second Kieffer Declaration.

- In mid-December, 2002, IDX again approached Ms. Maylin of Jackson Lewis and asked her to continue her August, 2002 investigation of Dr. Leon's whistleblowing activities. Exhibit 2 (at pp. 179-80) to the Second Kieffer Declaration.

- IDX's attempt to re-invigorate Ms. Maylin's audit/investigation/review of SAGE and of Dr. Leon's concerns soon transitioned into an investigation by a Washington, D.C./national law firm, Crowell & Moring. Crowell & Moring issued letter reports concerning Dr. Leon's allegations in both January and July, 2003. See Exhibits 4-5 to the Second Kieffer Declaration.

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

- Crowell & Moring and Richard Bednar, a Crowell & Moring partner who was in charge of the IDX/SAGE investigation, clearly recognized that Dr. Leon was a force to be reckoned with and that his allegations resoundingly bore the ring of truth. For example, on January 6, 2003, Mr. Bednar wrote to Dr. Leon's then counsel that "[i]t appears that the primary source of information as to possible improper charging under [SAGE] is your client, Dr. Leon, and we seek to interview him." See Exhibit 6 to the Second Kieffer Declaration. In addition, on January 7, 2003, Mr. Bednar wrote as follows to one of IDX's in-house counsel (emphasis added):

> Because NIST is aware of the allegations, and because we are to inform the [year 1] auditors of the allegations, we need to complete our own internal investigation before the audit begins so that the auditors have the benefit of IDX findings and determinations regarding the allegations. **Otherwise, we run the risk of the auditors asking their own questions and drawing their own conclusions—or worse, hearing it from Leon and his lawyer**

Exhibit 7 to the Second Kieffer Declaration.

These actions, and many others like them taken by IDX, are wholly inconsistent with IDX's current litigation-driven position that neither Dr. Leon nor any other reasonable person could conclude that Dr. Leon's whistleblowing activities were somehow not undertaken in furtherance of a potential FCA claim.

### NIST'S SUSPENSION OF PAYMENTS UNDER THE SAGE GRANT IS HIGHLY RELEVANT AND IDX'S MOTION TO STRIKE REFERENCES TO THE SUSPENSION SHOULD BE DENIED

Despite all of the investigations undertaken by IDX concerning Dr. Leon's whistleblowing activities, in February of this year NIST suspended all payments under the SAGE grant. That suspension is based upon concerns relating to, *inter alia*, billing practices and the contribution and valuation of Carecast. See Exhibit 7 to the Kieffer Declaration filed

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

in support of this motion. NIST had the authority to take that action only "if a recipient fails to comply with the terms and conditions of an award...." 15 CFR §14.62(a)(1).

NIST's suspension of payments is extremely probative of the objective validity of Dr. Leon's whistleblowing activities. Indeed, the bulk of IDX's March 31, 2004 response to the NIST suspension of payments is devoted to an attempted explanation of labor billing and Carecast concerns first raised by Dr. Leon during 2002. See Exhibit B to the Second Kieffer Declaration filed in support of this motion.

Additional examples of the keen relevance of the NIST suspension abound in the record. For example, in IDX's opposition to the current motion, IDX attempts to launch a multi-faceted defense of the need for, and valuation of, Carecast—issues which Dr. Leon raised as part of his whistleblowing activities. *See, e.g.,* the Mansfield and Mitchell Declarations filed by IDX in support of its opposition to this motion. Those issues, of course, also lie at the heart of the NIST suspension of payments under SAGE and the on-going Federal Government investigations of IDX and SAGE. NIST's suspension of payments specifically mandates as follows:

> IDX shall provide the NIST Grants Officer with:
>
> (a) For any transfer(s) of LastWord software that IDX is counting as a cost share contribution under this award, verification from the receiving Joint Venture member(s) of the date the member(s) received such software;
>
> (b) source documentation related to any direct or indirect costs that have been charged to the award that relate to the sale, installation, training, and associated costs for the LastWord software to any Joint Venture member(s) in this award; and
>
> (c) copies of each customer's sales contract used to support the IDX LastWord software valuation under 15 C.F.R. Sec. 295.25. IDX shall describe what products and services, if any, were included in the price.

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

The record before this Court establishes without contradiction that each of those areas of inquiry finds its genesis in Dr. Leon's whistleblowing activities. Despite IDX's numerous investigations of Dr. Leon's accusations, and IDX's continuing denials of the validity of Dr. Leon's incessant whistleblowing, one overriding conclusion remains untouched: Dr. Leon's whistleblowing activities were undertaken in good faith, objectively reasonable furtherance of a potential False Claims Act claim.

IDX's motion to strike references to the key NIST suspension of payment is entirely without merit, and it should be denied.

## CONCLUSION

The Court has before it a wealth of briefing concerning a wide variety of issues,[5] including motions for summary judgment concerning various aspects of the False Claims Act retaliation cause of action. With respect to the current motion, the record before the Court conclusively establishes that there are no genuine issues of material fact concerning Dr. Leon's entitlement to partial summary judgment on the first two elements of his False Claims Act retaliation claim and that, as a matter of law, the current motion should be granted.

Dated this 9th day of September, 2004.

        GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP

        By   s/Kenneth G. Kieffer
            Kenneth G. Kieffer, WSBA No. 10850
            kkieffer@gth-law.com
            Albert R. Malanca, WSBA No. 01226
            amalanca@gth-law.com
            Timothy L. Ashcraft, WSBA No. 26196
            tashcraft@gth-law.com
            Attorneys for Plaintiff

---

[5] In its Opposition to the current Motion, IDX continues to raise issues concerning the correspondence between IDX and Dr. Leon's counsel during September, 2002. Those issues have already been thoroughly briefed before the Court, and Dr. Leon respectfully incorporates herein his current briefing concerning those issues, including, inter alia, his Motion to Strike the Declaration of David Boerner.

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2004, I electronically delivered the foregoing to the following: M. Edward Taylor at etaylor@sebrisbusto.com, Rick Kaiser at rkaiser@sebrisbusto.com, Lisa N.W. Dublin at ldublin@sebrisbusto.com, Angelo J. Calfo at acalfo@yarmuth.com, Michelle K. Peterson at mpeterson@yarmuth.com, Michael Rosenberger at mrosenberger@yarmuth.com, and Jordan Gross at jgross@yarmuth.com, counsel for defendant IDX in the above case.

*/s/ Leslee C. Hoober*
Leslee E. Hoober, Legal Assistant
GORDON THOMAS HONEYWELL
MALANCA PETERSON & DAHEIM
   1201 Pacific Avenue Suite 2100
   Tacoma WA 98402
   253-620-6500
   253-620-6565
   Attorneys for Mauricio A. Leon

PLTF'S REPLY IN SUPPORT OF REVISED MOTION FOR PARTIAL
SUMMARY JUDGMENT - 11 of 11
(CV03-1158P)
[1281818 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565