UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAURICIO LEON,

        Plaintiff,

v.

IDX SYSTEMS CORPORATION et al.,

        Defendants.

No. C03-1158P

ORDER DISMISSING PLAINTIFF'S CLAIMS DUE TO PLAINTIFF'S SPOLIATION OF EVIDENCE

    This matter comes before the Court on Defendant's Motion to Dismiss and for Terms re: Spoliation of Evidence and Plaintiffs' Response. Defendant IDX seeks dismissal of this case or other appropriate sanctions against Plaintiff Dr. Mauricio Leon for having erased data relevant to the litigation from the hard-drive of his IDX-issued computer using a wiping program that he created after he had notice of the pendency of the litigation. Having reviewed the papers and the pleadings submitted by the parties, and having heard oral argument on the issues and reviewed the video transcript of Dr. Leon's deposition, the Court hereby GRANTS Defendant's motion. Plaintiff's claims are hereby DISMISSED. In addition, Plaintiff shall pay Defendants $65,000.00 to reimburse them for the expense incurred in investigating and litigating the issue of spoliation.

## BACKGROUND

    This matter originally came before the Court as two related cases. On April 25, 2003, IDX Systems Corporation ("IDX") brought an action for declaratory relief, essentially seeking a declaration that it can terminate Dr. Mauricio Leon's employment without violating the anti-

ORDER - 1

retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h), the Sarbanes-Oxley Act of 2002, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq or its State law counterpart, the Washington Law Against Discrimination ("WLAD"), RCW 49.60.  On May 20, 2003, Dr. Leon filed his own complaint for damages and injunctive relief, including claims for retaliation under the False Claims Act, violations of the ADA and WLAD, and state common law claims of wrongful termination, fraudulent inducement, and negligent and intentional infliction of emotional distress. The Court ordered the cases to be consolidated, with Dr. Leon as the plaintiff in name.

Dr. Mauricio Leon began his employment with IDX in May of 2001 pursuant to an "at-will"-style employment agreement.  His job title was "Senior Director, Medical Information," and he was allegedly compensated at an annual salary of $160,000 plus bonus payments.  His job duties included involvement with what was known as the "SAGE" project, a project funded through the National Institute for Standards and Technology ("NIST") for the purpose of developing software tools and technologies in the area of medical informatics.

Both parties allege that in mid-2002 Dr. Leon began complaining of mismanagement of the SAGE project, claiming that certain aspects of the cost-sharing reporting may be illegal.  By September 9, 2002, it appears that serious disagreements had arisen between the parties.  IDX alleges that on this date Dr. Leon demanded an exorbitant severance package in exchange for his silence regarding alleged federal false claims.  In any case, it appears that Dr. Leon worked intermittently through several stints of different types of administrative and medical leave during the next several months.  Over this time, Dr. Leon also alleges that IDX was violating the False Claim Act through "various illegal and fraudulent activities" and through its hindrance of various audits of the SAGE program grant.  Dr. Leon also claims that IDX constructively discharged him, and failed to accommodate his stress-related disability by allowing him to telecommute.

IDX served the summons on its complaint on April 28, 2003.  On April 30, and on May 7, 2003, IDX's attorneys sent letters to Dr. Leon's attorney, asking that Dr. Leon return the IDX-issued

ORDER - 2

laptop computer in his possession to IDX. (Taylor Decl., Exs. A, B). On May 8, 2003, Dr. Leon's attorney responded to IDX's request in writing and asked if Dr. Leon could keep the laptop so that he could assist auditors who were in the process of auditing the Sage Project. (Id., Ex. C). On May 9, 2003, counsel for IDX responded that Dr. Leon could keep the laptop for the "specific purpose" of responding to SAGE Project auditors, should they need to speak with him. (Id., Ex. D). Both the April 30 and the May 9 letters cautioned Dr. Leon's counsel that Dr. Leon should take care to preserve all data on the computer and to make sure no information was lost.

By July 11, 2003, the SAGE Project auditors had completed their task. (Id. at ¶ 8). Around this time, Dr. Leon's counsel withdrew from the case and he hired his current counsel. By October 24, 2003, counsel for both sides were again negotiating for the return of the laptop. (Id. at ¶¶ 9, 10). Not until January 21, 2004, were both sides able to strike a deal. (Calfo Decl., Ex. A). IDX's computer forensics expert took delivery of the laptop on February 5, 2004. (Norberg Decl., at ¶2).

IDX's expert reported in a declaration submitted to the Court that during his examination of Dr. Leon's computer, he noticed that "all data in the hard drive's unallocated space (*i.e.* the space where data that has purportedly been deleted by the user is housed) was intentionally wiped. . ." (Id. at ¶5). Additionally, the forensics expert determined that the computer had been used to view and download pornographic files, in contravention of IDX company policy. (Id. at ¶8). Both of these conclusions are supported by Dr. Leon's own testimony in a May 13, 2004, deposition.

Dr. Leon, in his deposition, admits deleting entire directories of personal files as early as October 2002, and after he was placed on leave by IDX in April 2003. He describes these files as family pictures and personal financial information, which he deleted by directory, rather than one-by-one. (Gross Decl. at 9-12).    Later in the deposition, Mr. Leon also states that in the week before he shipped the computer back to IDX he wrote a program to write over or "wipe" any deleted files from the unallocated space in the IDX laptop's hard-drive. (Id. at 16-21). According to Dr. Leon, his program would not allow a subsequent user to read the files he had deleted, but an identifying tail or head of the data would remain. (Id. at 19). IDX's computer forensics expert observed that Dr.

ORDER - 3

Leon's program deleted more than 2,000 files from the hard-drive of his computer. (Norberg Decl. at 3). Although Dr. Leon alleges that the purpose of his wiping program was to make sure that someone would not be able to see the personal files that he deleted, at least some of the remaining identifiers of the deleted files reveal that some of the wiped files could have pertained to Dr. Leon's work at IDX or the SAGE project. Additionally, many of the wiped files appear to be of a pornographic nature. (Norberg Decl., Exs. A, B).[1]

## ANALYSIS

Federal trial courts are vested with a wide range of inherent powers that allow them to govern their courtrooms and the litigation processes before them. Chambers v. Nasco, 501 U.S. 32, 43 (1991). An example of these inherent powers is the discretionary power of a federal trial court to levy appropriate sanctions against a party who prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to litigation. Glover v. Bic Corporation, 6 F. 3d 1318 (9th Cir. 1993). Inherent powers must be used only with restraint and discretion. Chambers, 501 U.S. at 44. In order to sanction a party to litigation for spoliation of evidence the Court must determine first whether or not there was a duty to preserve the evidence at issue. Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991). If a duty existed, the court must also consider the prejudice suffered by the non-spoliating party and the level of culpability of the spoliator. After considering these factors, a court must then consider all available sanctions and determine the appropriate one. See e.g. Fujitsu Ltd. v. Federal Express Corp, 247 F. 3d 423 (2nd Cir. 2001); Wm. T. Thompson Co. v. GNC, 593 F. Supp. 1443 (C.D. Cal. 1984).

I.  Did Dr. Leon Have a Duty to Preserve Data on His IDX-issued Laptop?

---

[1] A week after oral argument was heard on the issue of spoliation, Dr. Leon came forward with an unsolicited statement that he had allegedly made backup copies of his laptop's hard-drive before he ran the wiping program. He had not revealed this information during his deposition. This self-serving revelation will not be credited by the Court at this late date, however, because Mr. Leon's credibility on this matter is questionable, his revelation is untimely, and there is no way to verify whether these backups are full, true copies of the original hard-drive in dispute.

ORDER - 4

A litigant or potential litigant is under a duty to preserve evidence in his possession that he knows or should know is relevant to litigation or which might lead to the discovery of admissible evidence. Id.. 593 F. Supp. 1443 at 1455. Courts have applied this principle even when a complaint has not yet been filed. Turner, 142 F.R.D. at 73 (citing Callelupo v. FMC Corp, 126 F.R.D. 545 (D. Minn. 1989)). In Callelupo the court found that an employer had notice of a pending class action a month before the complaint was served, based on conversations that the plaintiff in that case had had with the company's equal employment opportunity manager several months before the litigation formally began. 126 F.R.D. at 550. As a result, the Callelupo court held that destruction of evidence after this date was sanctionable. Id. In the case at hand, Dr. Leon threatened IDX with litigation as early as September 2002. By April 25, 2003, IDX had filed an action for declaratory relief. On April 30 and May 7, Dr. Leon's counsel had received letters regarding the litigation and expressly cautioning Dr. Leon to ensure that no data was lost on his computer. This Court finds Dr. Leon knew or should have known that he was in possession of evidence relevant to pending litigation by April 30, 2004. Thus, Dr. Leon had a duty to preserve evidence in his possession no later than this date. Any spoliation that took place after this date is sanctionable.

II.  Is IDX Prejudiced by the Loss of Evidence from Dr. Leon's Laptop?

Before Dr. Leon returned the laptop to IDX, Dr. Leon's counsel acknowledged in an October 24, 2003, email to IDX attorneys that both sides recognized the relevance of the material on the laptop stating that: "in many instances the files are the original form of potentially relevant evidence." (Turner Decl. Ex. E).   By purposely creating a program to wipe the hard-drive of "potentially relevant evidence," Dr. Leon has precluded IDX from using any information that may have been stored in the hard-drive in its defense. Although Dr. Leon claims that he only wiped personal files, there is evidence (as discussed above) that not everything that was erased was personal. The Court knows from Dr. Leon's own deposition testimony that he was not, in fact, meticulously selective about the information he wiped, but that he chose to delete entire directories without verifying their contents. Defendants aptly note that, "Leon was not entitled to make unilateral decisions as to what

ORDER - 5

information on his laptop was relevant to this suit based on his subjective determination of what he considered "personal." (Defs.' Reply at 5). Indeed, there could be a wealth of "personal" material that could be relevant to Dr. Leon's ADA and employment-related claims. Defendants give examples of what might have been in Dr. Leon's personal directories that could have helped their case: Dr. Leon's correspondence with Realtors, financial institutions, friends or family would be relevant to the timing of his decision to resign from IDX; communications with Dr. Leon's health care providers or friends and family regarding the stress-related illness he allegedly developed while working at IDX would be relevant to his ADA claims; efforts to find other employment or start a business instead of remaining with IDX could also be relevant. (Defs.' Reply at 5). The point is that because of Dr. Leon's actions there is now no way of knowing what might have been stored on the laptop's hard-drive and no reliable way of recreating what might have been there. Under these circumstances, a party responsible for the destruction of potential evidence has no right to a presumption that the documents destroyed were irrelevant. National Assen of Radiation Survivors v. Turnage, 115 F.R.D. 543, 557 (N.D. Cal., 1987) (quoting Alexander v. National Farmers Org., 687 F. 2d 1173 (8th Cir. 1982)). On the contrary, courts must draw the strongest inferences allowable in favor of the party denied access to potentially relevant evidence. Id.

Leon's counsel suggests that IDX is not prejudiced because: 1) IDX had sole possession of Dr. Leon's laptop for three weeks starting September 11, 2002, when Dr. Leon was escorted out of the IDX building because of the parties' dispute, and 2) Dr. Leon was on the IDX network and may have sent much of the material on his computer over the network at some time. Plaintiffs assert that IDX employees had a chance to inspect the contents of Dr. Leon's computer either while it was in their possession or because a portion of the contents of Dr. Leon's laptop is probably located somewhere on IDX's network. This argument, however, does not hold up under scrutiny. First, much of what might have been pertinent to IDX's defense would have been created after October 2002, during the year when the relationship between the parties was at its most contentious. Second, Dr. Leon stated in his deposition that he wiped his hard drive specifically to avoid having IDX

ORDER - 6

officials see what was there. (Calfo Decl. at 15). This same impulse would also probably have kept him from sending sensitive information about his SAGE project observations, health issues or other employment-related concerns over the IDX network. Additionally, there is no evidence that he shared his pornographic web browsing on the IDX network because this would have violated company policy, as did his use of the laptop for this purpose. Because the type of evidence just discussed would likely be at the heart of IDX's defense were it available, this Court finds that Dr. Leon's wiping of the laptop hard-drive severely prejudices Defendants.

### III. Dr. Leon's Culpability

Willful spoliation occurs when a party has clear notice of an obligation to preserve evidence and proceeds to intentionally destroy evidence in spite of its obligation not to. Computer Associates Int'l.v. American Fundware, Inc., 133 F.R.D. 166, 170 (D. Colo., 1990). Under the most lenient interpretation, Dr. Leon's behavior amounts to willful spoliation of evidence because he knew or should have known no later than April 30, 2003, that he was under a duty to preserve all data on the laptop. In flagrant disregard for this duty, however, he went to the trouble of writing his own C-language program to write over deleted documents in his hard-drive, thus using his own computer expertise and knowledge to block forensic detection of whatever information he had stored in and deleted from his personal directories. While Leon argues that his wiping of relevant evidence was negligent because he only meant to wipe "personal" information from the computer, the Court has already established that Dr. Leon did not have the authority to make unilateral decisions about what evidence was relevant to this case. Furthermore, Dr. Leon did not even verify that he was only deleting personal information. As mentioned previously, Dr. Leon deleted whole directories without looking at their contents and designed his wiping program to write over data indiscriminately. (Kieffer Decl., Ex. 1 at 15). The Court finds that the extraordinary measures to which Dr. Leon resorted to destroy evidence relevant to this litigation merit a finding of bad-faith.

### IV. Sanctions

Having determined that Dr. Leon was under a duty to preserve data on his computer at the date he created the wiping program, that IDX was severely prejudiced by Dr. Leon's use of the wiping program, and that design and use of a wiping program constituted bad-faith spoliation on Dr. Leon's part, this Court may sanction Dr. Leon's behavior. Wm. T. Thompson Co., 593 F. Supp. at 1455. A wide range of sanctions is available because spoliation encompasses a wide range of behaviors. Henderson v. Tyrell, 80 Wn. App. 592, 605, 910 P. 2d 522. The Court may exclude certain evidence at trial, direct that an adverse inference instruction against the spoliator be given to the jury, fine or demand monetary sanctions from the spoliator, or dismiss a complaint or enter a default judgment against the spoliator. Id. at 1457. Sanctioning spoliators serves a punitive and a prophylactic function. Nation-wide Check Corporation v. Forest Hills Distributors, Inc., 692 F. 2d 214, 218 (1st Cir. 1982). By punishing a spoliator, the Court ensures that he will not profit through his misdeeds. Additionally, those who might be tempted to emulate the spoliator's behavior will be deterred. Where a spoliator's behavior is egregious, dismissal or default is appropriate. Computer Associates Intel., 133 F.R.D. at 168. Accordingly, this Court finds that dismissal of Dr. Leon's claims is an appropriate sanction for his behavior.

In this instance, less drastic sanctions are not useful. A ruling excluding evidence would be futile, as the most salient evidence has been destroyed and any material that might have been helpful to the Defendants cannot be produced due to the wiping of the hard-drive. Fashioning a jury instruction that creates a presumption in favor of the Defense would leave Defendants equally helpless to rebut any material the Plaintiff might use to overcome the presumption. Finally, while a fine might adequately punish Dr. Leon for his actions, it does nothing to arm the Defense with evidence to counter Plaintiff's claims.

In this case, the extreme nature of Dr. Leon's bad-faith behavior, combined with the harm done to Defendants merits a dismissal of Dr. Leon's claims with prejudice. Additionally, Defendants IDX submitted a detailed affidavit at oral argument outlining the expenses it incurred investigating and litigating the issue of Dr. Leon's spoliation. The costs came to approximately $65,000.00. The

Court has reviewed this information and finds the charges and costs listed therein reasonable. In order to restore IDX to where it would have been had Dr. Leon observed the rules of litigation, this Court also orders Dr. Leon to pay Defendants $65,000.00.

## CONCLUSION

Because Dr. Leon's behavior demonstrates an egregious disregard for the litigation process and IDX's case was damaged by his actions, this Court GRANTS Defendants' motion. The Plaintiff's claims are hereby ordered DISMISSED with prejudice and Plaintiff Leon is ordered to pay $65,000.00 in litigation costs to Defendant IDX within sixty days of this order. Defendants shall advise the Court which, if any, of their outstanding motions they would like the Court to consider. This notification shall be made within five days of this order.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: September 30, 2004

/s/ Marsha J. Pechman_____
Marsha J. Pechman
United States District Judge

ORDER - 9